285 So.2d 177 (1973)
J.C. McDONALD
v.
STATE of Mississippi.
No. 47484.
Supreme Court of Mississippi.
November 5, 1973.
*178 Alford & Mars, Philadelphia, for appellant.
A.F. Summer, Atty. Gen. by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
BROOM, Justice:
The appellant, J.C. McDonald, has appealed after being convicted of assault and battery with intent to kill and murder Jimmy Hawkins. Admittedly, the appellant shot Hawkins but the appellant pleaded self-defense as a legal justification. Trial was in the Circuit Court of Neshoba County, which court sentenced the appellant to a term of ten years in the state penitentiary. Any narration of the facts is not necessary here. The dialogue (questions and answers) between the district attorney and several witnesses is dispositive of the issue before us. It requires reversal.
Appellant argued several assignments of error but we deem it necessary to discuss only one. That assignment, in effect, is that the trial court committed reversible error in permitting the district attorney to ask the appellant, the appellant's witnesses and one state witness questions which concerned irrelevant matters, which were prejudicial in their effect upon the jury.
The state presented Dr. William V. Noblin who testified concerning his medical examination and findings related to the wound received in March 1971 by Hawkins, the victim of the shooting. Over the appellant's objection, the trial court permitted Dr. Noblin to state that he found in January 1972 that Hawkins had developed "acrotic tissue," bed sores and infection. These findings were made some ten months subsequent to the date that Hawkins was shot by the appellant.
When the appellant presented his wife, Mildred McDonald, to testify in his behalf, the district attorney on cross-examination propounded the following question: "And Mildred, your husband drinks quite frequently, doesn't he? He drinks all the time, doesn't he?" An objection made by the appellant's counsel was sustained. Then the following question, similar in meaning, was asked: "Your husband was a drunkard, wasn't he?" Subsequently, the following questions were asked by the prosecution in the process of continuing cross-examination: "You have separated from him several times, haven't you?" "You have even come in and talked about filing for a divorce, haven't you?" Objections were made to each of these questions. Then the appellant's wife was asked the following question by the district attorney: "And you didn't get an FHA loan to build a house because you had to get the land from your daddy and your husband's name had to be on the deed, and because of his drinking problem you wouldn't go ahead with the loan, would you?" Defense counsel objected and the court's ruling was "Go ahead."
After the court made its "Go ahead" ruling, the district attorney asked Mildred: "And now, Mildred, after the shooting you went up the road and talked to Bill Spivey, didn't you?" She answered in the negative. She was then asked: "And you cussed Bill Spivey out because you felt like he had given your husband that whiskey to ." The court overruled an objection made by the defense counsel. Following that ruling, the next question was: "And you sat out there in front of Bill Spivey's house and called him a son of a bitch, didn't you?"
The appellant presented, as a witness for himself, Bill Spivey, who was asked on cross-examination by the district attorney, "Well, you knew he [appellant] shot a fellow here a few years ago, didn't you?" Subsequently said witness was asked by the district attorney: "You didn't know that he took a .22 rifle and shot his own son in the stomach with it?"
The appellant testified in his own behalf and then was cross-examined by the district *179 attorney. The district attorney asked the appellant:
Q.J.C., this same boy you are talking about, you wanted to get him out of your house, didn't you? You didn't want this boy living in the house with you after that shooting, did you? Didn't you try to get the law to get the boy out of the house?
A. That wasn't the one. That was my oldest boy, the one that got shot.
Q. What boy was it you didn't want to live with you?
A. That's J.C. Jr., that's in the Army. That's a younger boy.
Q. You did everything you could to get that boy out of the house, didn't you?
BY MR. ALFORD: Your Honor, please, we object. That's irrelevant, talking about another boy.
Subsequently in the cross-examination of the appellant, the following question was asked by the district attorney: "J.C., all the years your father-in-law, John Hudson, has helped you financially, hasn't he?" Objection was made by defense counsel but overruled by the court. Then the district attorney asked: "All these years your father-in-law John Hudson has fed those children, hasn't he?" The appellant answered, "No, sir." The answer was followed by the question: "Because you were taking the same money that you were making and spending it on whiskey." A little later on the appellant was asked by the district attorney: "And your wife and children there that Sunday morning, because they knew your father-in-law had been feeding you and your children all these years, they knew that you had stolen that money that morning." An objection was made to these questions about feeding the children and stealing the money, but the court overruled the objection.
The effect of the questions and answers outlined above was to cause the jury to receive insinuations and evidence which were irrelevant and immaterial to the issue being tried. Furthermore, such insinuations and evidence were highly inflammatory and prejudicial. Consequently, the jury was caused to be made aware of the fact that months after the shooting incident the wound suffered by the victim (Hawkins) of the alleged crime became infected, acrotic tissue developed, and other complications arose. The questions also had the effect of giving the impression that the appellant was a constant drinker, a drunkard, one who had separated from his wife, one whose drinking problem had resulted in an inability to get an FHA loan, and that the appellant had shot someone else years ago, and had even shot his own son in the stomach. Some of these questions were objected to by the defense counsel. Possibly appellant may or could have been the sort of person indicated by the foregoing dialogue but he was only on trial for shooting Jimmy Hawkins.
The question before us in substance is whether or not the appellant received a fair trial in view of the action of the prosecution in repeatedly placing before the jury throughout the trial the prejudicial, irrelevant and immaterial matters hereinabove described.
The very nature and content of the matters in question which were presented to the jury were inflammatory. Incompetent evidence, inflammatory in character, when presented to a jury carries with it a presumption that it was harmful. As held by us in Coleman v. State, 198 Miss. 519, 23 So.2d 404 (1945), we will reverse a conviction unless it can be said with confidence that the imflammatory material had no harmful effect upon the jury. We held in Sumrall v. State, 272 So.2d 917 (Miss. 1973) that we would not in every case reverse a conviction because of only one instance of inflammatory and irrelevant material being presented to the jury but that a combination of instances may render them "fatally prejudicial." Indeed this Court has always been, and is now, reluctant *180 to reverse a criminal conviction for the reason under discussion, except when mandated to do so in order to accord a fair trial to every defendant whose liberty is at stake.
This Court long ago had before it a similar question in Kearney v. State, 68 Miss. 233, 8 So. 292 (1890). There, on cross-examination by the district attorney, and over the objection of the defendant, the court permitted the district attorney to ask the witness: "Do you know whether or not he [the defendant] has ever killed a man before?" It was decided that reversible error was committed in not sustaining the objection to the question because it was related to a prior offense committed on "another and independent occasion."
It is error in the course of a trial where one is charged with a criminal offense for the state to inject extraneous and prejudicial matters and lay them before the jury. A combination of such instances may become fatal error and ground for reversal even though the court sustains objections to such questions. This is especially true when after an objection is made and sustained, the prosecution then compounds the error by asking the same question in different words. One of the ingredients of a fair and impartial trial is that an accused person should be tried upon the merits of the case. Expressing it another way, the question of guilt or innocence of the crime charged should be received by the jury unhampered by any suggestion or insinuation of any former crime or misconduct that would prejudice jurors. Of course, under proper circumstances, prior convictions for certain criminal offenses may be shown to impeach the credibility of a witness or defendant. In the case before us testimony was elicited and questions were asked, though sometimes not answered, indicating that the appellant was accused (not convicted) of unrelated offenses not presently before the court. Considerable latitude should be given prosecutors in order that their zeal and devotion to duty may be pursued as they seek justice in criminal trials. As we have said before, it is not required that an accused person be given a perfect trial but justice does require that he be given a fair trial. We commend vigorous prosecutions so long as they are conducted within the rules of evidence. Our adversary system of jurisprudence does not contemplate that attorneys for either side will be completely passive or indifferent during court trials. Yet, fundamental fairness requires that any defendant should not be subjected to testimony and tactics which are highly inflammatory and prejudicial as shown by the record before us. See Allison v. State, 274 So.2d 678 (Miss. 1973); Kelly v. State, 278 So.2d 400 (Miss. 1973); and Wood v. State, 257 So.2d 193 (Miss. 1972).
This is not a case where the evidence of the guilt of the accused is so great or overwhelming as to justify a finding that no fair-minded jury could have reached a different verdict than that which was reached here. It is our opinion here that the appellant was deprived of a fair and impartial trial because the jury was subjected to the injection of inflammatory, irrelevant and immaterial testimony pertaining to extraneous issues and unrelated offenses.
Reversed and remanded.
RODGERS, P.J., and SMITH, ROBERTSON and SUGG, JJ., concur.