427 So.2d 100 (1983)
Floyd WILLIAMS
v.
STATE of Mississippi.
No. 53809.
Supreme Court of Mississippi.
February 9, 1983.
*101 Gary L. Bates, William E. Chapman, III, Jackson, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Presiding Justice, for the Court on Parts I  V.
ROY NOBLE LEE, Justice, for the Court on Part VI.
This is an appeal from the Circuit Court of Copiah County wherein the appellant, Floyd Williams, was convicted of the rape of a female under the age of twelve years and sentenced to life imprisonment in the Mississippi Department of Corrections. Having perfected his appeal, the appellant raises several assignments of error.
Hattie Hillard, a female child of eleven years of age, testified that Floyd Williams lived with her mother, Mable Hillard, in a trailer near Crystal Springs, Mississippi, along with Hattie's other brothers and sisters. Hattie stated that on Sunday, June 28, 1981, around 4:00 p.m., Floyd Williams came into the trailer and sent Hattie's brother on an errand and then told Hattie to go in the back room and pull her clothes off. Hattie further testified that the appellant had been drinking and that he hit her with an electrical cord. She also testified that his penis went inside her and that if she told anyone he would kill her.
After Williams left the trailer, Hattie stayed in the trailer without notifying anyone except her brother, Antonio, that she had been raped. On direct examination, Hattie stated that she did not tell her mother because her mother would not have believed her and that she was afraid of the appellant who lived with them.
The next morning, upon waking, Hattie awakened her older sister, Constance Hillard Williams (no relation to the appellant), and told her that she had been raped. Upon examining Hattie, Constance observed that her vagina was swollen and darkened, and that her panties contained a yellow discharge. Constance immediately notified the police, who in turn called Reverend J.C. Killingsworth, a local minister, to transport Hattie and her mother to a physician for treatment.
Upon referral by a local physician, Rev. Killingsworth took Hattie and Mrs. Hillard to the University Hospital in Jackson where Hattie was treated by Dr. Reeda Lyons. Dr. Lyons testified that Hattie had a two to three millimeter laceration on the perineal. Dr. Lyons estimated that due to the freshness of the scab covering the laceration, the trauma causing the laceration occurred within the last six to twelve hours.
The defense presented several witnesses who testified that the appellant was present at a party next door to the trailer all afternoon, and that he never left the party except to pick blueberries with some of the witnesses.
On appeal, the appellant raises the following assignments of error for review:

*102 I.
The trial court erred in admitting hearsay testimony by the State's witnesses, C. Williams and Killingsworth, of the child's statements which were not made in the presence of the defendant as to who committed the alleged crime.
The appellant contends that the complaints of the alleged victim were strictly hearsay and inadmissible since they were not made as soon as a reasonable opportunity presented itself. However, the testimony of the victim indicated that she had been threatened by the appellant that he would kill her if she told anyone of the incident; and, that even if she had told her mother, her mother would not have believed her. Further, Rev. Killingsworth testified as to the attitude of Mrs. Hillard (the mother) toward her child:
BY MR. HORN:
Q. Reverend Killingsworth, again, sir, what, if anything, did Mable Hillard tell you concerning her daughter, Hattie Hillard, when you were there at the Davenport house?
A. Said she had not been raped. It was a God damn lie, and she was going to beat her God damn brains out 
Q. Now, later 
A.  for telling a lie. And I told her: "It may be that you better not hit her under these circumstances, you might better wait." And the (sic) said that the laws had been out there messing with her, and the damn monkies and now, here you come.
Q. Later when you went to the University Hospital, what, if anything, did Mable Hillard say concerning her daughter, Hattie?
A. The girl came out and told her, "yes", that she was raped, that "Floyd raped me."
Q. What did Mable say?
A. Mable told her that she was a God damn liar. She hadn't been raped, wasn't nothing wrong with her. She just needs her damn brains beat out, that's all that was wrong with her.
Q. Did she say that to Hattie or to the person at the University Hospital.
A. To Hattie.
Q. Who was there?
A. In my presence.
It is obvious from the record that the child was intimidated by the appellant and her mother, and that she had no one to turn to at the time of the attack except her twelve-year-old brother, Antonio. The appellant and the mother returned to the trailer in the early evening. The child reported the rape the next morning to her older sister as soon as she had an opportunity without fear of reprisal or attack.
This Court stated the general rule on the admissibility of the victim's outcry after being raped in Anderson v. State, 82 Miss. 784, 788, 35 So. 202, 203 (1903):
Ordinarily any and all statements made by a party assaulted after the commission of the crime is hearsay, and not admissible. An exception is made in the case of rape alone, but even in that case no statements made by the prosecutrix are admissible except her complaint that she had been ravished. The details of the transaction, the name of the party accused, the place where it is said to have occurred, the time of the alleged offense, cannot be proven by a repetition of the words of the prosecutrix. The exception in cases of rape is made upon the idea that outraged virtue will proclaim her wrong, and therefore silence might be considered as raising a suspicion of consent.
See also Brooks v. State, 242 So.2d 865 (Miss. 1971); Dickey v. State, 86 Miss. 525, 38 So. 776 (1905); Ashford v. State, 81 Miss. 414, 33 So. 174 (1902).
When faced with a similar situation concerning hearsay testimony following a sexual assault, the Michigan Court of Appeals stated:
Hearsay testimony concerning the details of a complaint of sexual assault is admissible where the complainant is of "tender years" if her statement is shown to have been spontaneous and without indication of manufacture, and if any delay in making the complaint is excusable *103 insofar as it is caused by fear or other equally effective circumstances. (Emphasis added). (People v. Mikula, 84 Mich. App. 108, 116, 269 N.W.2d 195, 199 (Mich. Ct. App. 1978)).
We adopt the reasoning of the Michigan Court as sound and hold that the child's delay in reporting the incident was justified under the circumstances.
The appellant also contends that the trial court erred in admitting the testimony of Rev. Killingsworth as to who committed the crime. The trial court properly sustained the defense's objection to this portion of Killingsworth's testimony and received adequate assurance from the jurors that they would disregard his remarks that the victim told him that the appellant raped her.

II.
The appellant assigns as his second error that the lower court erred in not granting the appellant's motion for a directed verdict after the State had concluded its case.
The trial court properly overruled the appellant's motion for a directed verdict. The testimony of the State's witnesses established that:
(1) The child was alone in the trailer at the time of the rape, except for her brothers and sisters.
(2) The appellant had been drinking.
(3) The child testified that the appellant had raped her which was consistent with the medical examination which revealed that the child's private parts had a two to three millimeter laceration with a fresh scab, six to twelve hours old.
(4) Medical testimony indicated that the child's vaginal wall was easily expandable as if there had been something that had expanded the vagina.
(5) The child's testimony concerning physical abuse and threats by the appellant.

III.
The appellant assigns as error that the trial court erred in overruling the appellant's motion for a mistrial after Rev. Killingsworth testified that the child said she had been raped twice by the appellant. The following occurred during the trial:
Q. Now, would you please tell the Jury what, if anything, Mable Hillard said concerning her daughter, Hattie, at the University Hospital?
A. Mable  Hattie told her that, "Mama, Floyd raped me twice."
BY MR. MAY:
You Honor, we're going 
A. You don't want to know that? BY MR. MAY:
May it please the Court, I'm going to have to make a Motion at this time.
BY THE COURT:
I'll sustain the objection and limit  as I recall, there was no foundation laid for anything that Hattie Hillard said to her mother, Mable Hillard, so I will sustain the objection. Ladies and gentlemen of the Jury, would you disregard that last remark and not consider it in arriving at your verdict? Will each of you do so? If you will disregard it, hold up you hand, please.
(All 12 Jurors held up hand).
Very well, let the record show that all 12 jurors held up their hand.
We find that the trial court's instructions to the jury to disregard the objectionable portion of Rev. Killingsworth's testimony was sufficient and it is presumed that the jury heeded the trial judge's admonition.

IV.
The appellant assigns as error that the trial court erred in granting the State's jury instruction No. S-1 which states:
The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that on or about the 28th day of June 1981, the defendant, Floyd Williams, a male person over the age of eighteen years, lacerated or tore the private parts of Hattie Hillard, a female child under the age of twelve years in an attempt to have carnal *104 knowledge of her, then you should find the defendant guilty as charged.
Jury Instruction No. S-1 tracks the language of Mississippi Code Annotated § 97-3-65 (Supp. 1981):
In all cases where the female child is under the age of twelve (12) years it shall not be necessary to prove penetration of the female's private parts where it is shown the private parts of the female have been lacerated or torn in the attempt to have carnal knowledge of her.
The instruction properly followed the statute and was not error. When an accused is charged with having carnal knowledge of a female under the age of twelve years, the State's proof need not show penetration, but only that the private parts of the female have been lacerated or torn in the attempt to have sexual intercourse with her. In this case, there was not only proof of a laceration of the victim's private parts, but she testified that appellant inserted his penis into her vagina.

V.
The appellant assigns as error that the jury verdict was against the overwhelming weight of the evidence.
We have stated many times that the jurors may accept the testimony of some witnesses and refuse that of others and that they may accept in part and reject in part the evidence on behalf of the State and on behalf of the accused. McLelland v. State, 204 So.2d 158, 164 (Miss. 1967). It is not for this Court to pass upon the credibility of witnesses and where the evidence justifies the verdict it must be accepted as having been found worthy of belief. See also Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980).
THE JUDGMENT OF THE LOWER COURT FINDING THE APPELLANT GUILTY IS AFFIRMED.
All Justices concur, except DAN M. LEE, J., who dissents.

VI.
ROY NOBLE LEE, Justice, for the Court:
The appellant next assigns as error that the trial court was without authority to impose a sentence of life imprisonment.
The appellant's brief under Assignment VI constitutes a single paragraph, embracing four (4) lines. The State's response to that assignment consists of one (1) paragraph comprising five (5) lines. The appellant's reply brief contains one (1) page and, for the first time, states that the prosecution did not follow the applicable sentencing feature; that the penalties under Mississippi Code Annotated § 97-3-65(1) (Supp. 1982) were waived, and that the court was required to impose a sentence reasonably less than life. [See Appendix].
The charge in the indictment follows Section 97-3-65, which states, in part:
(1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a female child under the age of twelve (12) years, upon conviction, shall be sentenced to death or imprisonment for life in the state penitentiary; ... .
(2) Every person who shall forcibly ravish any female of the age of twelve (12) years or upward, or who shall have been convicted of having carnal knowledge of any female above the age of twelve (12) years without her consent, ... and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the state penitentiary for any term as the court, in its discretion, may determine. (Emphasis added)
It is obvious that an accused convicted of raping a child under the age of twelve (12) years shall be sentenced either to death or to life imprisonment in the penitentiary. The appellant misread, or misinterpreted, the statute and has presented the question here solely on the proposition that the trial judge had no authority to impose the life sentence and that the case should be remanded for him to sentence the appellant *105 to a term reasonably less than life,[1] citing Lee v. State, 322 So.2d 751 (Miss. 1975) and Stewart v. State, 372 So.2d 257 (Miss. 1979). In taking that position, the appellant relies upon the last sentence of Section (2) of the statute which provides: "... and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the state penitentiary for any term as the court, in its discretion, may determine."
There is no merit in that contention. However, by the Assignment VI, appellant has raised, apparently unintentionally, the more serious questions of (a) whether the case must be presented to a jury for imposition of sentence, either death or life imprisonment, (b) whether the State waived (and can waive) the death penalty, and (c) whether the case, from its beginning, proceeded as an offense which required a sentence no greater than life imprisonment.
Mississippi Code Annotated § 99-19-101 (Supp. 1982) provides that the jury shall determine punishment in capital cases, regardless of whether the accused enters a guilty plea or is found guilty in the guilt phase.
In Rouse v. State, 222 So.2d 145 (Miss. 1969), a forcible rape trial, the jury returned a verdict finding the accused guilty as charged. On that verdict, the trial judge sentenced the appellant to death. Three (3) jurors who expressed conscientious scruples against imposing the death penalty were challenged for cause by the State and were excused. The court reversed for that reason, stating:
We reverse the order of the trial court sentencing the appellant to death and remand for a new trial as to punishment only. Witherspoon v. Illinois [391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776], supra; Yates v. Breazeale, Supt. of Miss. State Penitentiary, 402 F.2d 113 (5th Cir.1968); and Irving v. Breazeale, Supt. of Miss. State Penitentiary, 400 F.2d 231 (5th Cir.1968).
There is an alternative open to the court which would obviate the impaneling of a new jury to pass upon the punishment to be imposed. If the district attorney and the trial judge agree, then the trial judge could sentence the appellant to life imprisonment without the intervention of a jury.

We express no opinion as to which of the two procedures outlined above should be followed in this case; the decision is up to the district attorney and the trial judge. We only point out the alternatives open to the trial court. (Emphasis added)
In Bullock v. Harpole, Supt. State Penitentiary, 233 Miss. 486, 494-95, 102 So.2d 687, 690 (1958), in approving a sentence of life by the trial judge, the Court said:
A jury in this case could have fixed no lighter punishment than that which the court imposed. The appellant could have gained nothing by having the court go through the formality of empaneling a jury for the purpose of obtaining the jury's approval of the sentence of life imprisonment, and no prejudice resulted from the failure of the trial judge to empanel a jury to fix the punishment. We think that no constitutional right of the appellant was violated when the court pronounced the sentence without empaneling a jury to fix the punishment.
We recognize that in Shorter v. State, 257 So.2d 236 (Miss. 1972), the Court, citing Anthony v. State, 220 So.2d 837 (Miss. 1969), said that the jury has a right to return a death penalty in murder cases and when such verdict is returned, the judge has no alternative except to sentence the prisoner as is required by statute. However, we distinguish that case from the case sub judice where it is apparent that, from its beginning, the court and all involved proceeded on the trial with life imprisonment being the maximum punishment.
*106 The record reflects that, at the outset of the trial, on voir dire examination, during the trial, arguments and instructions, the jury was not told that the appellant was being tried on a capital charge punishable by the death penalty. Neither the State's brief nor appellant's brief even suggests the case involved the death penalty, and there is no cross-appeal by the State from the lower court's action and judgment. The only indication in the record of a capital case was the recognizance bond fixed at the preliminary hearing, which bond set forth "capital case." Bond was fixed in the amount of thirty-five thousand dollars ($35,000) when, if the State had been pursuing the matter as a capital charge (death penalty), no bond would have been allowed.[2]
It is inconceivable that an experienced trial judge and attorneys would build a record void of any reference to the death penalty and absent that which was absolutely necessary to protect the constitutional rights of the defendant, if he was being tried for a capital case with possibility of the death penalty being inflicted. It is inescapable from the record that the trial court, the prosecuting attorney, and the defense attorney were not trying the case, and the jury was not hearing it, with a view of the death penalty, and that the case was tried upon the theory that the highest penalty to be inflicted was life imprisonment.
We know, through experience and as a matter of common knowledge, that numerous homicide cases occur in this state during the period of a year. Probably a great many of those homicides result in indictments for capital murder. However, very few capital murder cases, compared to the great number of homicide cases, are appealed to this Court for decision. It stands to reason, therefore, that in many capital murder cases the State does not proceed on capital murder for infliction of the death penalty and the cases are disposed of either on pleas of guilty to simple murder or on trials for murder (rape) less than capital.
The following are instances where the trial judge, whether erroneously or correctly, may rule against the death penalty in a capital case:
(1) Grant a motion for directed verdict or request for peremptory instruction of not guilty (either phase).
(2) Sustain a motion for judgment notwithstanding the verdict (either phase).
(3) Sustain a motion for new trial.
(4) Grant a mistrial after selection of the jury without having a lawful ground therefor.
The record, or lack of record, in the case sub judice indicates without doubt that the case proceeded to trial as a rape not justifying the death penalty. The jury found the appellant guilty as charged, and the only sentence under such verdict which could be imposed was a life sentence by the trial judge. On that guilty verdict by the jury, with no other sentence to be imposed, the status of the case was the same as in Bullock v. Harpole, supra. Therefore, we hold that the trial judge was not required to send the jury back to the jury room for the purpose of returning a verdict of life imprisonment, and he did not commit error in the procedure followed by him.
For the reasons stated, the judgment and sentence of the lower court is affirmed.
AFFIRMED.
BROOM, P.J., BOWLING, HAWKINS and ROBERTSON, JJ., concur with Part VI.
PATTERSON, C.J., WALKER, P.J., and PRATHER, J., dissent as to Part VI.
DAN M. LEE, J., takes no part as to Part VI.

APPENDIX

Appellant's Brief (P. 14)
The Appellant submits that since the jury did not recommend a sentence of life imprisonment, under Lee v. State, 322 So.2d *107 751 (Miss. 1975) no such sentence could be imposed by the trial court and thus a sentence of life imprisonment is void.

Appellee's Brief (P. 14)
Appellant argues that since the jury did not recommend a sentence of life imprisonment the life sentence was improper. Appellee would show the record does not contain the written verdict of the jury. Appellant has presented an insufficient record for determination of the error he claims.

Appellant's Reply Brief (P. 8)
Even though the record does not contain the written verdict on the jury, it is however, sufficient for determination of the error complained of under this Proposition. It is clear from a review of the two (2) Jury Instructions given by the state the jury was without authority to return a sentence of life imprisonment. The jury was instructed their verdict upon finding the Appellant guilty should be in the form "We the Jury, find the defendant guilty as charged." (R. 246) In addition the trial court Minute Book reflects the verdict returned into open court as "We, the Jury, find the Defendant Guilty." (R. 252)
Since the crime the Appellant was indicted, arraigned and tried for is a capitol [sic] offense, Section 99-19-101 of the Mississippi Code Annotated of 1972 (as amended) is the sentencing procedure mandated by law. The Appellant submits since the jury was not instructed regarding the sentence to be given the Appellant and thus unable to recommend one and since the prosecution did not follow the applicable sentencing procedure, the penalties under Section 97-3-65(1) of the Mississippi Code Annotated of 1972 (as amended) were waived. Therefore the sentence of life imprisonment imposed on the Appellant is void and the Appellant submits he can only be sentenced to a term of years reasonably expected to be less than life. Stewart v. State, 372 So.2d [257] 259 (Miss. 1979).
WALKER, Presiding Justice, dissenting as to Part VI:
I respectfully dissent from the holding of the majority that the State, through the district attorney, may waive the death penalty and not submit that issue to a jury after a defendant has been convicted of a capital crime. The statute does not permit this to be done.
Appellant contends that since the crime he was indicted, arraigned, and tried for is a capital offense, Mississippi Code Annotated section 99-19-101 (Supp. 1982), is the sentencing mandated by law. Subsection (1) of section 99-19-101 provides:
Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the issue of the imposition of the penalty. If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitutions of the United States or of the State of Mississippi. The state and the defendant and/or his counsel shall be permitted to present arguments for or against the sentence of death.
The appellant contends that since the trial court did not submit the issue of punishment to a jury after his conviction of the primary capital offense charged and did not follow the applicable sentencing procedure, that the penalties under Mississippi Code Annotated section 97-3-65(1) (Supp. 1982) which provides for a sentence of either life *108 or death were waived. The appellant also contends that the sentence of life imposed is void and argues that he can now only be sentenced to a term of years reasonably expected to be less than life.
I agree with the appellant that the trial court did not have the authority, once the jury returned a verdict of guilty of a capital offense, to sentence appellant to life imprisonment without submitting the matter to a jury. Section 99-19-101(1) makes it clear that upon conviction of a capital offense, either by a jury or plea of guilty, the sentencing proceeding shall be conducted before a jury, impaneled for that purpose to determine whether the defendant should be sentenced to death or life imprisonment.
In my opinion any penalty imposed by the trial court, whether it be a life sentence or death sentence, without impaneling a jury to determine which punishment should be imposed is void and of no effect so long as the conviction of the capital offense stands. The State nor the defendant has the authority to waive submitting the issue of sentencing to the jury. This does not mean, however, that after a defendant has been indicted for a capital offense that he may not plead to a lesser included offense, if permitted by the court on recommendation of the State, and receive a sentence appropriate to the lesser crime.
Therefore, in my opinion, the sentence of the trial court of life imprisonment imposed upon the defendant is void and this cause should be reversed and remanded to the trial court with directions that the defendant be afforded a bifurcated trial under the procedures outlined in section 99-19-101(1).
I feel compelled to answer two obvious questions which come to mind.
The first question is whether the imposition of the death penalty for the rape of a female child under the age of twelve years constitutes cruel and unusual punishment in violation of the United States Constitution. This Court answered that question in Upshaw v. State, 350 So.2d 1358, 1360 (Miss. 1977) where we said:
We will first address defendant's argument that the death penalty for the rape of a female child under the age of twelve years constitutes cruel and unusual punishment in violation of the United States Constitution. After oral argument, we deferred consideration of the case until the United States Supreme Court decided Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). After the decision in Coker additional briefs were requested on the applicability of Coker to this case. In Coker the Court took great pains to limit its decision to the applicability of the death penalty for the rape of an adult woman. The Court stated: "That question, with respect to rape of an adult woman, is now before us." At least six other times the majority opinion referred to the rape of an "adult woman." As we view Coker the Court carefully refrained from deciding whether the death penalty for the rape of a female child under the age of twelve years is grossly disproportionate to the crime.
In considering this question we must accept the United States Supreme Court's concept that the Eighth Amendment bars the death penalty for minor crimes. Certainly rape of a female child under the age of twelve years is not a minor crime and we are of the opinion that the Eighth Amendment does not prohibit death as a punishment for the crime. In reaching this conclusion we follow the principle that it is the function of the legislative department, and not the judicial department, to define crimes and prescribe the punishment therefor. The question of whether the death penalty is an appropriate punishment for the rape of a female child under twelve years of age should rest in the legislatures of the fifty states of the Union. Chief Justice Burger, in his dissent in Coker, stated:
Our task is not to give effect to our individual views on capital punishment; rather, we must determine what the Constitution permits a State to do under its reserved powers. (433 U.S. at 604, 97 S.Ct. at 2872, 53 L.Ed.2d at 997).
The next question presented is whether remanding this case for a new trial with the *109 possibility that Williams may receive a death sentence violates the double jeopardy clause of the Constitution of the United States[1] and the Constitution of the State of Mississippi.[2] It would not.
According to Arthur W. Campbell, Law of Sentencing § 59 (1978), "The most common exception to the general rule prohibiting enhancement of an imposed sentence occurs where the original sentence is void. The United States Supreme Court has held that the correction of a void sentence, even though such correction enhances the original sanction, does not violate the double-jeopardy clause." Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).
Bozza was convicted in Federal District Court on all counts of a five-count indictment which charged violation of the Internal Revenue Laws in connection with the operation of a still. In summarizing the case and rendering a decision on whether a plea of double jeopardy could prevail, the court said:
The only statute for violation of which petitioner's conviction is sustained by us carries a minimum mandatory sentence of fine of one hundred dollars and imprisonment, 26 USCA 1940 ed. § 2833(a), 6A FCA title 26, § 2833(a). In announcing sentence at a morning session, the trial judge mentioned imprisonment only. Thereafter the petitioner was taken briefly to the U.S. Marshal's office and then to a local federal detention jail awaiting transportation to the penitentiary where he was finally to be confined. But about five hours after the sentence was announced, the judge recalled the petitioner and according to stipulation, stated in the presence of petitioner and his counsel that "in the imposition of sentence this morning ... it has been called to my attention that there are certain mandatory fines and penalties which I omitted to impose. For the record now minimum mandatory fines and penalties will be imposed." Thus a one hundred dollar fine was fixed, as required by law, along with the imprisonment sentence. Petitioner charges that this action constituted double jeopardy forbidden by the Federal Constitution.
It is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal, Reynolds v. United States, 98 U.S. 145, 168, 169, 25 L.Ed. 244, 251; Murphy v. Massachusetts, 177 U.S. 155, 157, 20 S.Ct. 639 [640], 44 L.Ed. 711, 713, or in habeas corpus proceedings. Re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149. But in those cases it was recognized that an excessive sentence should be corrected, even though the prisoner had already served part of his term, not by absolute discharge of the prisoner, but by an appropriate amendment of the invalid sentence by the court of original jurisdiction, at least during the term of court in which the invalid sentence was imposed. Cf. DeBenque v. United States, 66 App.D.C. 36, 85 F.2d 202, 106 A.L.R. 839. In the light of these cases, the fact that petitioner has been twice before the judge for sentencing and in a federal place of detention during the five hour interim cannot be said to constitute double jeopardy as we have heretofore considered it. Petitioner contends, however, that these cases are inapplicable here because correction of this sentence so as to make it lawful increases his punishment. Cf. United States v. Benz, 282 U.S. 304, 309, 51 S.Ct. 113 [114], 75 L.Ed. 354, 357. If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. Cf. Jordan v. United States (CCA 4th) 60 F.2d 4, 6, with Barrow v. United States, 54 App. D.C. 128, 295 F. 949. This Court has rejected the "doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error *110 in passing the sentence." Re Bonner, supra (151 U.S. at 260, 14 S.Ct. 323 [at 327], 38 L.Ed. 153). The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. See King v. United States, 69 App.D.C. 10, 98 F.2d 291, 296. In this case the court "only set aside what it had no authority to do and substituted directions required by the law to be done upon the conviction of the offender." Re Bonner, supra [151 U.S.] at 260 [14 S.Ct. at 327]. It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense. (330 U.S. at 165-67, 67 S.Ct. at 648-649).
Later, in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Court commented on Bozza saying:
This Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal. In Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the defendant was convicted of a crime carrying a mandatory minimum sentence of fine and imprisonment. The trial court, however, sentenced the defendant only to imprisonment. Later on the same day, the judge recalled the defendant and imposed both fine and imprisonment. This Court held that there was no double jeopardy. (449 U.S. at 134-35, 101 S.Ct. at 436).
The Court went on to observe in DiFrancesco that in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), "... that there was no absolute constitutional bar to the imposition of a more severe sentence on reconviction after the defendant's successful appeal of the original judgment of conviction. The rule of Pearce, permitting an increase of sentence on retrial, is a `well-established part of our constitutional jurisprudence.' Id., at 720, 89 S.Ct. 2072 [at 2078], 23 L.Ed.2d 656. See Chaffin v. Stynchcombe, 412 U.S. [17] at 24, 93 S.Ct. 1977 [at 1981] 36 L.Ed.2d 714. See also Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919). If any rule of finality had applied to the pronouncement of a sentence, the original sentence in Pearce would have served as a ceiling on the one imposed at retrial. While Pearce dealt with the imposition of a new sentence after retrial rather than, as here, after appeal, that difference is no more than a `conceptual nicety.' North Carolina v. Pearce, 395 U.S. at 722, 89 S.Ct. 2072 [at 2079] 23 L.Ed.2d 656." (449 U.S. at 135-36, 101 S.Ct. at 436-37).
In United States v. Henry, 680 F.2d 403 (5th Cir.1982), that Court commented on DiFrancesco saying:
In sum, our examination of DiFrancesco leads us to conclude that it stands for the proposition that the double jeopardy clause does not provide an absolute bar to increasing a defendant's sentence. Any prior holdings to the contrary are overruled. We further conclude in this case that the double jeopardy clause was not violated where the increase occurred in the correction of an illegal sentence.
... .
The lower court had the authority under Rule 35 to vacate the illegal sentence on Counts II and III and impose a new consecutive sentence on Count II. The sentences on these two counts were interdependent, and if one was illegal, both sentences were illegal. In correcting the sentence on Count II from a concurrent term of years to a consecutive term of years, the double jeopardy clause was not violated. The correction of an illegal sentence does not involve double jeopardy rights. Furthermore, there is nothing inherent in the double jeopardy clause which prevents the increase of a sentence in the district court, even if the sentence is legal. The judgment of the lower court is AFFIRMED. (680 F.2d at 411-12).
In the case sub judice, the trial court had no authority to sentence appellant to life in prison after his conviction of a capital offense, i.e., carnal knowledge of a female *111 under twelve years of age. Section 99-19-101(1) provides that after an accused has been convicted of a capital offense that the trial judge shall impanel a jury and conduct a hearing before them to determine whether the accused should receive a sentence of life in prison or a sentence of death. Therefore, remanding this case for a new trial in accordance with section 99-19-101(1) would not violate appellant's constitutional guarantees against double jeopardy.
As I stated earlier, once a defendant has been convicted of a capital offense the statute, section 99-19-101 mandates that a sentencing hearing be held. After conviction, sentencing becomes a judicial function in which the State does not have prosecutorial discretion. Moreover, in cases where the death penalty may be imposed, discretion must be guided by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) mandated standards and guidelines so as to prevent arbitrary, capricious and freakish imposition of the death penalty. For us to allow post conviction prosecutorial discretion by district attorneys, it will inevitably lead to uneven and freakish impositions of the death penalty. Each of the various district attorneys will have different standards, some based on personal engrained bias or prejudice, in determining whether to waive the sentencing phase of a capital trial. They will not be guided by any meaningful guidelines and standards as required by Furman and, in my opinion, put our death penalty statutes in serious jeopardy of being declared unconstitutional. If the district attorney did not intend for the defendant to be tried as a capital case, then he should not have indicted him of a capital offense or should have reduced the charge to a lesser offense prior to trial. In my opinion, once the jury returned its verdict of guilty in this capital case, the district attorney had no discretion as to whether to proceed with the sentencing phase of trial before a jury as mandated by statute.
PATTERSON, C.J., and PRATHER, J., join this dissent.
NOTES
[1] We must give appellant's counsel credit that he would not appeal this case and assign as error No. VI, if he was aware the case might be reversed and remanded for consideration of imposing the death penalty.
[2] When the evidence is clear or the presumption is great that the accused committed a capital crime (death penalty) he is not entitled to bond.
[1] United States Constitution Amendment V.
[2] Mississippi Constitution of 1890 Art. 3 § 22.