457 So.2d 327 (1984)
Leon SMITH
v.
STATE of Mississippi.
No. 54356.
Supreme Court of Mississippi.
September 12, 1984.
*328 Percy S. Stanfield, Jr., Merrida P. Coxwell, Jr., Stanfield, Carmody, Coxwell & Creel, Jackson, for appellant.
*329 Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.

I.
SULLIVAN, Justice, for the Court:
Leon Smith was convicted in the Circuit Court of the First Judicial District of Harrison County, Mississippi, of carrying a concealed weapon under Mississippi Code Annotated § 97-37-1 (1972), and sentenced to life imprisonment without parole under § 99-19-83 (Supp. 1983). Smith assigns as error the trial court's actions in,
(1) Failing to quash the indictment on the ground of double jeopardy;
(2) Failing to grant a mistrial upon improper and prejudicial cross-examination by the district attorney;
(3) Refusing the defendant's instructions on circumstantial evidence;
(4) Refusing to grant a peremptory instruction on the ground of insufficient evidence.
For the reasons set out below, we find no merit in Smith's claim that he was subjected to double jeopardy, but conclude that the prosecutor's misconduct in this case requires reversal of the conviction and remand for a new trial.

II.
On August 30, 1979, the police, acting on a tip, arrested Smith at an apartment complex near Gulfport, Mississippi. Smith's car was searched, and in the trunk police found a large quantity of tools and a .38 caliber revolver. Smith was subsequently indicted separately for possession of burglary tools and carrying a concealed weapon.
At the first trial, on the burglary tools charge, the trial court ordered that no mention be made of the weapon. The state put on its proof that the automobile belonged to the defendant, and that the tools were found in the trunk of the defendant's car. The state's investigators testified that the tools were identical to those frequently used in burglaries, but admitted that the tools were also commonly used in legitimate trades. Smith's defense was based on testimony by two occupants of the apartment, Susan Haskins and Christine Spears, that the tools belonged to one Bobby Scarborough, who, according to Spears, had placed them in the trunk of Smith's car. In closing argument, Smith's attorney contended that the tools found in Smith's trunk could be used legitimately and that the state must prove that they were adapted or designed for breaking and entering. Defense counsel principally relied, however, on Spears' testimony that Bobby Scarborough owned the tools and put them in the trunk of Smith's car hours prior to his arrest. The jury found Smith not guilty of possession of burglary tools.
In the second trial on the concealed weapons charge the trial court entered an order excluding any evidence of the burglary tools. The state offered substantially the same testimony as in the first trial regarding Smith's ownership of the vehicle and the discovery of the weapon in the trunk of the car. Smith offered the same defense in the form of Haskins' and Spears' testimony that the weapon belonged to Bobby Scarborough. Spears further testified that Bobby had placed the weapon in the trunk of Smith's car in her presence.
On cross-examination, the district attorney brought out the fact that both Spears and Haskins were temporarily living rent-free in an apartment leased by one of defense counsel's clients. Haskins explained the reason for her temporary move to Jackson was her fear that the prosecutor would harass her if she returned to testify:
Q Is the free rent in Jackson contingent upon you coming down here and testifying?
A No, sir.
Q In other words, they just, you testified May the 13th and you sounded so *330 good they just wanted to give you a nice apartment in Jackson?
A No, sir.
Q You just suddenly decided you wanted a change of scenery; you wanted to move to Jackson?
A No, sir. I went to Jackson because I figured that I would be harassed by you for testifying.
Q You figured I was going to harass you?
A Yes, sir.
Q I see.
A That's the reason I went to Jackson.
Q Well, let me ask you this, have you been selling your body up there like you did on the Coast?
A I have never sold my body up there or on the Coast.
Q Are you telling me that you have never sold your body?
A Yes, sir, I'm telling you that.
BY MR. STANFIELD: Now, Your Honor, unless the District Attorney can prove it, we ask the Court to, uh, uh, we object to these remarks.
BY THE COURT: The Jury will disregard the District Attorney's remarks. Everybody promise me you'll do that? All right.
BY MR. STANFIELD: Your Honor, unless the District Attorney can prove what his mouth has just shot off, we ask the Court to declare a mistrial.
BY THE COURT: Overruled. The Jury has been instructed to disregard the remark. Everybody, that will be not a part of the evidence in the case. All right.
Spears also stated that she had been told the district attorney would arrest and imprison her if she returned to testify. Because of this accusation, the trial court allowed the district attorney to ask Spears if she had any knowledge of outstanding warrants against her, but twice admonished the prosecutor not to go into details of any alleged crime. The following exchange then occurred:
Q Didn't you know that there was some warrants for you, based on writing some checks?
A No, I didn't. I don't see how there could be any warrants when I ain't wrote no checks.
Q You ain't wrote no checks?
A No.
Q Well, didn't you run out of the Hancock Bank, at the Long Beach Branch, when you tried to cash a check... .
A (Interposing) No, sir, I did not.
Q May I finish?
A (Inaudible.)
BY MR. STANFIELD: Now, Your Honor, ...
BY THE COURT: (Interposing) All right, I sustain it.
BY MR. STANFIELD: ... he's violating your Order.
BY THE COURT: I've sustained the objection.
BY MR. STANFIELD: We move for the Court to declare a mistrial.
BY THE COURT: Overruled.
The district attorney's next attempt at discrediting Ms. Spears focused on the fact that she had not mentioned the weapon in her testimony at the first trial on the burglary tools charge:
And then you went outside and you saw him taking this pistol, saw him wrapping this pistol?
A A pistol similar to that ... (inaudible).
... .
Q Now, do you ever remember testifying to that before?
A No, sir.
Q What did you say last time?
BY MR. STANFIELD: Your Honor, we object now, under Court Order, under the Court's Order, may we approach the Bench?
BY MR. NECAISE: Judge, I have a right to go into a prior inconsistent statement.
(Off-the-record discussion at the Bench between Court and Counsel.)

*331 BY THE COURT: Objection overruled.
... .
Q But, you never mentioned anything about a pistol at the last trial, did you?
A Because I was told that I wasn't supposed to.
Q You was told not to mention anything... . .
A (Interposing) Right.
Q ... . . about, about a gun?
A That's right.
Q But, you knew all about the gun?
A Yes, sir.
The defense counsel was prevented from bringing out the fact that Spears was required by the trial court's ruling in the burglary tools trial not to mention the weapon:
Q Who told you not to mention or what to mention, when you testified last, pertaining to a gun?
BY MR. NECAISE: We're going to object to that, if the Court please.
A Nobody told me what to mention. I was just told to tell the truth, but that I shouldn't say anything about the gun.
Q Who told you that?
A You did.
BY MR. NECAISE: Object to that, if the Court please.
BY THE COURT: Sustained.
BY MR. NECAISE: And ask the Court to instruct the Jury to disregard that.
BY THE COURT: Overruled.
Q Did you give me a statement in writing, uh, on May the 8th of 1980, in Gulfport, Mississippi?
A Yes, sir, I did.
Q And in that statement did you tell me about a gun?
BY MR. NECAISE: Object to that, if the Court, Judge, he's trying to... ... .
A (Interposing) Yes, I did.
BY MR. NECAISE: ... . . bolster his own witness. He's trying to bolster his own, his own witness.
BY THE COURT: Sustained.
In the state's rebuttal case, the district attorney asked Ollie Scarborough, father of Bobby Scarborough, the following question:
Q Mr. Scarborough, I'm not paying your, your rent out there at your house, am I?
BY MR. STANFIELD: Your Honor, we object to that.
BY THE COURT: Sustained.
A I wish you was.
BY MR. STANFIELD: We object to that.
BY THE COURT: Sustained.
A And my utilities, too.
BY MR. STANFIELD: We object to that.
BY THE COURT: I sustain the objection.
BY MR. STANFIELD: We move for a mistrial.
BY THE COURT: Overruled. And I sustain the objection.
Also, in questioning Warren Scarborough, Bobby's brother, regarding the details of his prior conviction, an objection was made and sustained. The prosecutor then said:
BY MR. NECAISE: I'm not going to get him an apartment.
Q Now, ... ...
BY MR. STANFIELD: (Interposing) Now, Your Honor, we object... .
BY THE COURT: (Interposing) Sustained.
BY MR. STANFIELD: ... to his play to the jury and move for a mistrial.
BY THE COURT: Overruled.
Finally, the district attorney asked Warren, who was incarcerated at the time:
Q I haven't given you an apartment, have I and found, found you a job, have I?
BY MR. STANFIELD: Objection, Your Honor, if the Court please.
BY THE COURT: Sustained.
BY MR. STANFIELD: And move for a mistrial.
BY THE COURT: Overruled.
*332 The jury found Smith guilty of carrying a concealed weapon and the trial court sentenced him to life imprisonment without parole.

III.

DOUBLE JEOPARDY
Appellant's double jeopardy claim, if valid, would void ab initio his second trial and conviction for carrying a concealed weapon. The issue is controlled by this Court's recent decision in Sanders v. State, 429 So.2d 245 (Miss. 1983). In Sanders, charges of rape and burglary were brought against the defendant arising from an incident where someone broke into a residence and raped a woman. Sanders' defense was that Willie Earl Scott, also in the vicinity, was the true culprit. Sanders was found not guilty in the rape trial but was convicted in the subsequent burglary trial. This Court applied the "rational jury" inquiry formulated in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970):
Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires the court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.
397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475-76.
This Court examined what was presented and argued to the jury and concluded that the only rational basis for the jury's verdict was that it believed Sanders' defense that Scott was the man who broke into the house and raped the woman. Id. at 248. Defense counsel, in his motion for directed verdict, also urged that there was no proof of penetration; this Court declined, however, to consider that this issue influenced the jury because, (1) the lack of penetration argument was not presented to the jury, and (2) the evidence before the jury proved beyond a reasonable doubt that the victim had been "penetrated". Id. at 246, note 1.
The double jeopardy aspect of Sanders' second trial was also underscored by the fact that at the rape trial the state offered substantial evidence to show that he broke and entered into the victim's residence. Although admissible as part of the res gestae, this evidence placed him in substantial jeopardy as to the elements of burglary. Since he was acquitted in the rape trial, the double jeopardy clause barred the state from prosecuting him a second time for the same conduct. Id. at 251.
Applying this analysis to the case at bar, this Court must determine whether a rational jury could have grounded its verdict of not guilty in the burglary tools trial upon an issue other than the theory that Bobby Scarborough was responsible for placing the items in appellant's trunk.
The cross-examination by counsel for appellant of investigators Ladner and Price reveals an effort to convince the jury that the alleged burglary tools were in fact ordinary, everyday tools used frequently in legitimate trades. Investigator Ladner was asked at length whether there was anything unusual about the set of tools found in appellant's trunk that distinguished it from the contents of a general tool box. Investigator Price admitted that many of the tools can be used in legitimate businesses, and that a common coat hanger or credit card could be used as a burglary tool.
Counsel for appellant also pointed out the legitimate use of the alleged burglary tools in his closing argument to the jury, where he stated that he was going to destroy every tool he had at home because he did not want to be prosecuted for possession of burglary tools. He pointed out that the investigators testified that the tools could be used legitimately, and emphasized that the jury must find that there was intent to use the tools for breaking and entering in order to convict.
It appears that appellant advanced an alternate argument which, unlike Sanders, *333 was put before the jury in cross-examination and closing argument. Therefore, the jury could have rationally grounded its verdict of not guilty on the theory that the appellant possessed the tools with the intent to use them legitimately, and not in the commission of a burglary.
Ashe v. Swenson requires that for the appellant's acquittal in the first trial to bar the state on double jeopardy grounds from proceeding with the second trial, the single rationally conceivable issue in dispute before the jury must be whether or not the items found in the trunk of appellant's car belonged to him. On the one hand, appellant maintained throughout the trial that he did not own the tools and argued that they belonged to Bobby Scarborough, who placed them in the trunk. On the other hand, counsel for appellant attempted to show that he was an electrician and that the tools could have been legitimately used in his trade. The only indication as to appellant's trade was investigator Ladner's admission that he had heard that appellant was an electrician. When counsel for appellant attempted to raise this fact in closing argument, objection was made and sustained that this was unsupported by an evidence. Counsel for appellant also emphasized that since the alleged burglary tools had legitimate ordinary uses, the jury must find that the appellant intended to use the tools to commit burglary.
From the foregoing discussion, it appears that the jury could rationally have grounded its verdict of not guilty in the burglary tools trial on a premise other than that the items found in appellant's trunk did not belong to him, but to Bobby Scarborough. Based on the investigator's admissions, the jury reasonably could have concluded that the tools found in Smith's trunk were ordinarily used in legitimate businesses and that the state had failed to prove the intent to use them in the commission of a burglary. Viewed in this manner, appellant's acquittal in the burglary tools trial would not bar a subsequent prosecution for carrying a concealed weapon, since the jury's verdict of not guilty could have just as rationally been based on failure to prove Smith's intent to use the tools for burglaries as failure to prove that the items belonged to Smith.
When appellant's double jeopardy claim is analyzed in the alternate formulation in Sanders v. State, it is also clear that there is no double jeopardy problem. In Sanders, we held that the fact that the state put on proof at the rape trial that defendant had broken and entered the house placed him in substantial jeopardy as to the burglary charge. Having successfully eluded this jeopardy by convincing the jury that he was not the man who committed the crime, Sanders could not be tried a second time for the same conduct. 429 So.2d at 251. In appellant's first trial on the burglary tools charge, the motion in limine excluded any evidence of the weapon. Both charges of possession of burglary tools and carrying a concealed weapon contain the element of "possession"; however, the court order in the first trial insured no evidence would be introduced on the possession of the weapon. Therefore, appellant was not placed in jeopardy during the burglary tools trial on any element of the concealed weapon charge.
Based on the above discussion, it is apparent that Smith's double jeopardy claim is without merit.

IV.

PROSECUTORIAL MISCONDUCT
Appellant's assertion that a mistrial was required because of prosecutorial misconduct raises more serious questions. In addressing the question of whether the prosecutor's conduct was so prejudicial as to deprive the appellant of a fair trial, this Court has thoroughly considered the record and discussed a number of errors, all but one of which were raised by appellant. See Tudor v. State, 299 So.2d 682 (Miss. 1974). In cases where an appellant cites numerous instances of improper and prejudicial conduct by the prosecutor, this Court has not been constrained from considering the merits of the alleged prejudice by the fact that *334 objections were made and sustained, or that no objections were made. Wood v. State, 257 So.2d 193, 200 (Miss. 1972); Howell v. State, 411 So.2d 772, 776 (Miss. 1982); Forrest v. State, 335 So.2d 900, 902 (Miss. 1976). Each passage from the trial cited above will be discussed separately and then considered cumulatively.
The first instance cited by appellant is when the district attorney in cross-examining appellant's witness, Susan Haskins, asked whether she was selling her body in Jackson like she did on the coast. She denied this generally. He asked if she had never sold her body, and she affirmed that she had not. Counsel for appellant requested a mistrial, unless the state offered proof of the charge. Instead, the trial court instructed the jury to disregard the district attorney's remarks.
In Johns v. State, 255 So.2d 322 (Miss. 1971), this Court held that the statute which provides that a conviction may be given in evidence to impeach the credibility of a witness, Mississippi Code § 13-1-13 (1972), must be strictly construed. Id. at 324. In Johns, this Court held that a mistrial should have been granted when the prosecutor asked the defendant whether he had been charged with a crime, and then inferred, in the jury's presence, that he had proof that the defendant had been convicted of crimes in three different states, when in fact he had no such proof. Id.
In Stewart v. State, 263 So.2d 754 (Miss. 1972), this Court, citing Johns v. State, held that the state's cross-examination of an important defense witness to the effect that every place he had worked seemed to have been burglarized was clearly erroneous where there was no record that he had even been accused of the burglaries to which insinuation was made. Id. at 758. This Court also relied on 98 C.J.S. Witnesses § 515, p. 423 (1957), which states:
Cross-examination into the character of a witness may not be in the form of attempts to discredit him by means of sneers and innuendo. Hence it is improper, under the pretense of affecting the credibility of a witness, to propound interrogatories without any attempt or pretense to establish the truthfulness of the matters suggested by such inquiry and thereby cast insinuations on the witness... .
Where the question propounded is clearly for the purpose of creating in the minds of the jury a prejudice against the witness it is properly excluded. So, where the only purpose of the question is to insult or humiliate the witness, and thereby prejudice the jury, cross-examination as to irrelevant matters, even though dealing with the character of the witness, is improper... .
Id. at 757-758.
The district attorney's remarks come squarely within the prohibition in Stewart v. State against insinuations of criminal conduct which are unsupported by any proof. This incident does not by itself constitute reversible error in view of the trial court's admonition to disregard the prosecutor's remarks,[1] but it is error and may be considered with other such errors for its cumulative prejudice. Forrest v. State, supra.
The next incident of prosecutorial misconduct involves the district attorney's impeachment of Spears because of her failure to mention the weapon in the first trial, when he knew that a court order barred her from doing so. It is elementary that a witness's credibility may be attacked by showing that he has given testimony in a prior trial materially inconsistent with his present testimony. Dobbs-Maynard Co., Inc. v. Jumper, 388 So.2d 879 (Miss. 1980). The failure of Spears to mention a material circumstance presently testified to, namely that Bobby Scarborough placed the gun in defendant's car trunk, which it would have been natural to mention in the prior trial, renders the prior testimony sufficiently inconsistent. *335 However, the prosecutor who is aware that the omission was the result of a court order in the prior trial cannot use the fact of that omission to impeach the witness in a second trial. Impeaching a witness's credibility by an omission in prior testimony is improper when the omission resulted from the witness's abiding by a court order in limine. The prejudice to the appellant is substantial, in view of the fact that Spears, the sole eyewitness establishing appellant's defense, was improperly impeached concerning the essential fact of appellant's defense  whether or not someone else had put the weapon in appellant's car trunk. Furthermore, the trial court erroneously sustained the prosecutor's objection to the defense counsel's attempt to rebut the alleged inconsistent statement by questioning Spears regarding her prior consistent statement that mentioned both the gun and tools. In Stampley v. State, 284 So.2d 305 (Miss. 1973), we held that evidence of prior consistent statements is admissible when a witness's credibility has been attacked by proof of prior inconsistent statements provided the witness either denies or, as here, admits the statement but explains it. Under these facts, the trial court erroneously concluded that admission of the prior consistent statement constituted bolstering testimony.
The next instance of alleged misconduct involves the district attorney's questioning Spears about the details of a crime for which she was under indictment. The trial court permitted the prosecutor to question the witness regarding indictments against her, contrary to the general rule that a witness may not be cross-examined as to indictments pending against him, Barlow v. State, 233 So.2d 829 (Miss. 1970), in order to explain Spears' accusation that the prosecutor had threatened to have her arrested if she returned to testify. The trial court admonished the prosecutor twice not to go into the details of any alleged crime. What then followed was a blatant disregard of the trial court's admonition and a violation of the principle enunciated in Haralson v. State, 314 So.2d 722 (Miss. 1975) that,
The witness may not be asked nor proof made of the details of an alleged crime said to have been committed by the witness sought to be impeached.
Id. at 724.
The last instance of prosecutorial misconduct alleged is that the district attorney repeatedly asked his witnesses in rebuttal whether they were being provided with a rent-free apartment. While these questions serve to show, albeit heavy-handedly, that the credibility of the state's witnesses was not affected by any free lodging, the district attorney repeatedly returned to this line of questioning, despite the fact that the trial court had initially sustained defense counsel's objections. See Wood v. State, 257 So.2d 193, 198 (Miss. 1972).
In Wood v. State, supra, this Court was faced with a record of prosecutorial misconduct similar in many respects to the case at bar. In Wood, the prosecutor asked the only defense eyewitness whether he had ever been in jail, and discredited other defense witnesses by repeated questions directed to their immorality. In the case at bar, as in Wood, the impeachment of Spears, the only defense eyewitness, was attempted by proof of criminal charges, not criminal convictions. Impeachment of Haskins, the defendant's other eyewitness, was achieved by the prosecutor's naked accusation that she habitually engaged in an immoral crime, prostitution. Both of these lines of questioning were improper, inflammatory, and prejudicial. Stewart v. State, supra, Tudor v. State, supra. The prosecutor's apparent impeachment of Spears about an omission in her prior testimony caused by the trial court's ruling was likewise improper. The fact that Spears was the only defense witness to state that Bobby Scarborough had placed the weapon in appellant's car made this improperly elicited inconsistency about the weapon materially prejudicial to the defendant's case. In assessing the cumulative impact of the prosecutor's errors, we quote from Tudor v. State, where the *336 Court, speaking through Justice Walker, stated:
Appellant's counsel failed to object to some of the above matters, objected to others with the objection being sustained, and in some instances the court instructed the jury to disregard the testimony. In other instances, the objection was overruled and the evidence admitted. Some of the errors were more serious than others and although some of them may not alone constitute reversible error, we have no hesitancy in finding that a combination of all of the above deprived the appellant of his due process right to a fair and impartial trial. Incompetent evidence, inflammatory in character, when presented to a jury carries with it a presumption that it was harmful. McDonald v. State, 285 So.2d 177 (Miss. 1973). We will reverse a conviction unless it can be said with confidence that the inflammatory material had no harmful effect upon the jury. Coleman v. State, 198 Miss. 519, 23 So.2d 404 (1945). In McDonald, supra, Justice Broom speaking for the Court said:
It is error in the course of a trial where one is charged with a criminal offense for the state to inject extraneous and prejudicial matters and lay them before the jury. A combination of such instances may become fatal error and ground for reversal even though the court sustains objections to such questions... . One of the ingredients of a fair and impartial trial is that an accused person should be tried upon the merits of the case. Expressing it another way, the question of guilt or innocence of the crime charged should be received by the jury unhampered by any suggestion or insinuation of any former crime or misconduct that would prejudice jurors... . We commend vigorous prosecutions so long as they are conducted within the rules of evidence. Our adversary system of jurisprudence does not contemplate that attorneys for either side will be completely passive or indifferent during court trials. Yet, fundamental fairness requires that any defendant should not be subjected to testimony and tactics which are highly inflammatory and prejudicial as shown by the record before us. See Allison v. State, 274 So.2d 678 (Miss. 1973); Kelly v. State, 278 So.2d 400 (Miss. 1973); and Wood v. State, 257 So.2d 193 (Miss. 1972). (285 So.2d at 180).
Tudor v. State, 299 So.2d 685-86.
We are of the opinion that the prosecutor subjected the appellant in this case to such irrelevant, inflammatory and prejudicial evidence as to deny the appellant his right to a fair and impartial trial. Therefore, we reverse the case and remand for a new trial before another jury to determine his guilt or innocence.

V.
Appellant's remaining assignments of error regarding circumstantial evidence instructions and the sufficiency of evidence generally, are not discussed at length in view of our decision to reverse and remand for a new trial. In connection with appellant's contention that he was entitled to circumstantial evidence instructions, suffice it to say that the eyewitness testimony of the police officers who found the revolver concealed in appellant's car constitutes direct evidence that the illegal items were in his constructive possession. Curry v. State, 249 So.2d 414, 416 (Miss. 1971); Cf. Henderson v. State, 453 So.2d 708 at 709-710 (Miss. 1984).

VI.
In conclusion, we hold that appellant's double jeopardy claim lacks merit but that the case must be reversed and remanded for a new trial in view of the numerous prejudicial instances of prosecutorial misconduct.
REVERSED AND REMANDED FOR A NEW TRIAL.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., not participating.
NOTES
[1] See Williams v. State, 427 So.2d 100, 103 (Miss. 1983) (jury presumed to follow court's instruction to disregard hearsay).