THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES G. DI GIACOMO, Defendant-Appellant.

Second District  No. 77-357

Opinion filed April 18, 1979.

Mary Robinson and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant herein was convicted of battery, kidnapping, rape and deviate sexual assault. He was sentenced to a concurrent term of 364 days for battery and concurrent terms of 8-24 years on the aggravated kidnapping, rape and deviate sexual assault. He appeals.

Defendant was originally charged with these offenses against two complaining witnesses. Upon motion the cases were separated and the

instant case was tried. We will refer to the complaining witness in this case as witness "A" and the complaining witness in the severed case as witness "B."

On November 5, 1976, the complaining witness, "A", went to the Oliver Twist Tavern in Naperville and, as she got into her car to leave, a man came to her and offered her $5 for a ride into town, and she agreed. He got into the car and, as they were driving out of the parking lot, he put a knife under her chin and made her drive to a cornfield. During this ride she attempted to spray the man with Mace but he took the cannister from her. When they got to the cornfield she escaped but he tackled her. A fight ensued and he hit her in the back and in the stomach. He then dragged her into the back of the car and forced her to have oral and sexual intercourse with him. He then ordered her to drive back towards the Oliver Twist Tavern. He got out of the car at Book and Oswego Roads. The complainant then went to the police. An exhibit of possible perpetrators of the offense was submitted to her, which was introduced into evidence at trial as Group Exhibit 7A through 7L. She identified 7L as the man who had raped her.

The State called Miss "B", who testified that she had been abducted in a very similar manner earlier on the same evening. As she walked toward the entrance of the tavern a man came, grabbed her around the neck, pointed a knife at her throat and told her that she had to drive him since he was being chased by the police. The man forced her to drive him to the same cornfield where he forced her to take her clothes off and have oral and sexual intercourse with him. The offense testified to by Miss "B" occurred about 10:30 in the evening. The offense before us occurred at about 12:30 the same night.

It was a cold night and both victims testified that the defendant had thrown cigarettes out of the window. Miss "B" also identified People's Exhibit 7L as the photograph she had selected as portraying the man in the incident as being the defendant. A criminalist of the Illinois Bureau of Identification testified relative to a comparison of hair found in the motor vehicle of the victim "A" with that taken from the defendant. She testified, as an expert, that the two exhibits were identical and the chances of the sample taken from the motor vehicle belonging to another person would be 1 in 4500. The victim was also able to identify the clothing worn by the assailant. The defendant was arrested the following morning in a hotel room where similar clothing to that described by both victims was found. Both victims identified the defendant in open court.

Defendant has raised three contentions; first, that mathematical odds were used to identify the defendant; second, the introduction of a mug shot taken of the defendant in connection with an earlier offense was

improperly admitted into evidence; and lastly, that the trial court erred in admitting the testimony of Miss "B" as to a similar offense committed prior to the instant charge.

■■ The testimony of the expert witness, the State Criminalist, was properly introduced into evidence. Admissability of expert testimony is to be determined by the trial judge, who has considerable latitude of discretion in such introduction. A foundation was laid for the admission of the statistical conclusion and the mathematical odds are immaterial. The fact that the defendant did, in fact, have the same hair as that found in the motor vehicle had probative value and, while perhaps not conclusive, was certainly proper to be considered by the jury and properly admitted by the trial court.

The second argument, as to the admissibility of the mug shot, has been covered in detail and the position of this court is found in *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284, filed at the same time as this opinion, and we reaffirm our decision in that case, holding that the mug shot was properly admitted under the authority of the supreme court of this State.

The defendant has cited *People v. West* (1977), 51 Ill. App. 3d 29, 366 N.E.2d 1043, as authority for the inadmissibility of this photograph but, as we stated in *Wheeler,* we expressly overrule that decision. Rather, attention is directed to *People v. Hawthorne* (1978), 60 Ill. App. 3d 776, 377 N.E.2d 335, which we reaffirm.

The last contention of the defendant is that the testimony of Miss "B" as to the similar offense occurring within a matter of an hour or two of the instant offense was improperly admitted. The most recent case on this issue is found in *People v. Copeland* (1978), 66 Ill. App. 3d 556, 558-59, 384 N.E.2d 391, 394. The court there stated:

"However, when evidence of other crimes is so closely connected with the main issues in the case at bar that it proves the accused guilty of the offense charged, such evidence can be introduced at trial. [Citation.] * * * The rule and its exception are not automatically applied. Rather, the trial judge, in determining whether to permit the jury to hear evidence of another crime the defendant is alleged to have committed, must balance its relevancy against its tendency to inflame and prejudice the jury."

Therefore, it is clear that only when the evidence is sufficiently relevant to prove the accused guilty of the offense charged should it be admitted. In *Copeland* the defendant had robbed a gas station at 4:30 a.m. at Roosevelt and Kedzie in Chicago. Another victim was allowed to testify that he, too, was robbed in the early morning of June 17, 1976, less than a mile from the robbery at Roosevelt and Kedzie. The court held the admission of the other offense was proper as being closely related and

indicative of the *modus operandi*. In *People v. McDonald* (1976), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93, the defendant was charged with burglary. The complaining witness testified that the defendant attacked her in the middle of the night on December 1, 1969, as she was sleeping in her bedroom. She was awakened by a man who had his gloved hands around her throat, straddling her as she lay in bed. She was able to identify him. The trial court allowed the introduction of the testimony of another witness, one Eleanor Bailey, that she had been similarly attacked by the defendant while sleeping in a bedroom in her house three days after the attack on Mrs. Bowers, on December 4, 1969. The supreme court stated:

> "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence * * * [of] *modus operandi* is admissible though it may show the commission of a separate offense. [Citations.] In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. [Citations.]
>
> The character of attacks upon Mrs. Bowers and Mrs. Bailey and the *modus operandi* in each were similar in several respects." (62 Ill. 2d 448, 455.)

That is the situation before us. The two offenses occurred in a matter of one or two hours of each other and were almost identical in their perpetration.

A most similar case is found in *People v. Emmett* (1975), 34 Ill. App. 3d 167, 340 N.E.2d 235. In that case the defendant was found guilty of aggravated assault and deviate sexual assault upon a woman on January 26, 1972. He had attacked the woman with a knife, forced her to commit an act of cunnilingus. Another witness was allowed to testify that on January 14, 1972, the defendant had produced a knife, threatened to kill her if she screamed, and he then forced her to perform an act of oral copulation. The defendant therein contended that the admission of the latter testimony was improper and the appellate court, in substance, found the evidence admissible as being the *modus operandi* of the defendant. Likewise, in *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999, a similar situation arose involving a rape committed on August 20, 1970. At trial another woman testified that on July 18, 1970, she had been similarly attacked. The court held that while the rapes occurred within one month of each other,

> "We conclude that it was not improper to admit the testimony of the second woman. Common to both rapes are 'peculiar and distinctive features' which evidence a distinguishable *modus*

*operandi* on the part of the defendant. [Citations.] The evidence reveals an identical method or design common to both rape occurrences so as to earmark the crimes as the handiwork of the accused." 42 Ill. App. 3d 876, 886, 356 N.E.2d 999, 1007.

It is to be noted that the purpose of the introduction of the testimony of Miss "B" was to show the *modus operandi* and not for the purpose of identification. For that reason we find that our opinion in *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448 is inapposite. See also *People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516; *People v. Sievers* (1978), 56 Ill. App. 3d 880, 372 N.E.2d 705; *People v. Tucznyski* (1978), 62 Ill. App. 3d 644, 378 N.E.2d 1200.

■■ The evidence in this case is overwhelming as to the defendant's guilt. The victim positively identified the defendant both from the pictures shown to her, and in open court. The *modus operandi* is obvious and the testimony concerning it was proper. The judgment of the trial court is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.