539 So.2d 1366 (1989)
Steve (Steven) M. MITCHELL
v.
STATE of Mississippi.
No. 57746.
Supreme Court of Mississippi.
February 27, 1989.
*1367 T. Larry Wilson, Jones & Wilson, Richard W. Hamilton, Pascagoula, for appellant.
Mike Moore, Atty. Gen. by Felicia C. Adams and Jack B. Lacy, Jr., Sp. Asst. Attys. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Steve Mitchell was indicted by the Grand Jury of Jackson County, Mississippi, in October of 1985 for fondling five-year-old Shannon Bosarge on or about May 15, 1984. The case was originally tried on May 13, 1986, but that trial ended in mistrial. The case was tried again on June 3, 1986, where a jury found him guilty as charged. He was sentenced to five years in the Mississippi Department of Corrections, with a recommendation that Mitchell be enrolled in the RID program at Parchman, and also with a recommendation that after his release he continue psychiatric and psychological counselling. From this conviction and sentence Mitchell appeals. We reverse and remand.

FACTS
On or about May 15, 1984, five-year-old Shannon Bosarge came home from playing across the street at the Mitchell's house. She told her babysitter, Kathy Rylant, that Steve Mitchell, the father of her seven-year-old friend Jason, had placed his private parts on her back and that he occasionally walked around and sat around in front of the children with his genitals exposed. Kathy testified at trial that she related this conversation to Shannon's mother, Anita Bosarge.
Anita Bosarge testified that after Kathy related Shannon's conversation to her she asked Shannon what was going on with Steve Mitchell. Shannon related the same story to her. Anita remembered the date being on or about May 15, 1984. In June of 1984, the Bosarges moved because, according to Anita, she did not want her children around Steve Mitchell.
Shannon Bosarge testified at trial, being at the time eight years old. She stated that she went over to Mr. Steve's one day to play and pick up her little brother. She was wearing a sundress. Mr. Steve put his private part on her back. She turned around and saw it, and got up to retrieve her little brother and run home. She stated that she was in kindergarten at the time, but kindergarten may have been out for the summer. On cross-examination, Shannon could not say in what room the incident happened, or whether or not anyone else was in the room with her when it happened. She also could not remember what Mr. Steve was wearing that day, and she did not know if Cindy Mitchell, Steve's wife, was home or not.
In his defense, Steve Mitchell called his wife Cindy. She testified that the Bosarge children were not allowed to play in their home after May 1, 1984, because the Mitchells were involved in renovation and reconstruction of the house. She continued that Shannon could not be trusted in the house because one day in late April Shannon had gone around flipping switches in the house such that the breakers went out. On that day, Cindy ordered Shannon from the house and told her not to return. As Shannon was leaving the yard, she tripped over a string that had been put out to outline *1368 the foundation of the addition to their house. The reason Cindy knew that Shannon had not been back to the house after May 1 was because they poured concrete on May 1. Cindy stated that she called Anita Bosarge a year later and asked about the rumors between Steve and Shannon. She claimed Anita told her the girls did not remember anything about it because they hadn't made a big deal of it. On cross-examination Cindy testified that she had made a statement to another neighbor, Kenny Fuller, in August of 1985, that she would seek professional help for Steve if they could afford it. She also stated that she had not told Anita or Kathy, the babysitter, that Shannon was not to come back over because she was messing with switches in the house. She also stated that she had never seen Steve do anything like this in her presence.
The defense also called Jason Mitchell, the seven-year-old son of the defendant. Jason testified that Shannon came over to their house to play. He never saw his father take out his penis or rub it on Shannon. However, on cross-examination, Jason stated that he was not always in the same room with Shannon when she came over to play.
Steve Mitchell testified in his own defense that he had never touched Shannon or exposed himself to her. He also testified that the Bosarge children were in and out of the house, sometimes in and out of the bathroom without knocking.
DISCUSSION
The Court Erred by Forcing the Appellant to Twice Jeopardize His Freedom When a Second Trial was Had After the First Trial Ended in a Mistrial, Which Mistrial Had to be Declared as a Result of the State's Intentional Error.
Under his first assignment of error, Mitchell argues that he was unconstitutionally exposed to double jeopardy. His first trial ended in mistrial because the state's first witness, Kathy Rylant, became confused and began talking about an incident which happened between Mitchell and Shannon's older sister, Candace, on or about the same day that Shannon reported her incident with Mitchell to Kathy. Kathy's testimony at the first trial is as follows:
All right, after the kids came home and told me what had happened that day, it wasn't Shannon, it was Candy and her friend. I was over at the house watching them and they went over there to play with Jason. They came back home telling me that he would walk around the house ...
After several objections by the defendant, and after several attempts by the district attorney to straighten up Kathy's testimony before the jury, defense counsel requested to voir dire Kathy to determine if she was competent to testify as to date, time, and place the incident with Shannon occurred, without resorting to hearsay. During the voir dire, the trial judge stated that it was clear to him that the state was having problems establishing a date of the incident as to Shannon. After the voir dire, the trial judge called the jury back and the district attorney tried again to elicit testimony from Kathy as to the time and date the incident occurred with Shannon. Again, Kathy referred to "they," being Shannon's older sister and a cousin. Kathy could not, or did not, say for certain whether or not Shannon was fondled on May 15 when the other two girls came home and reported an incident involving them and Mitchell. After another set of objections, the defendant moved for a mistrial. The trial judge first overruled the motion, but then took a recess and reconsidered; he then declared a mistrial.
Mitchell urges that the state deliberately elicited testimony from Kathy after the voir dire in order to force the defendant to move for a mistrial.
In the recent case of Watts v. State, 492 So.2d 1281 (Miss. 1986), this Court reiterated the principle that "every time a trial aborts or does not end with a final judgment" *1369 does not necessarily mean that the prohibition against double jeopardy applies. Id. at 1284. If the mistrial is granted on the court's own motion or upon the state's motion, a second trial is barred unless there was manifest necessity for the mistrial. Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). However, even if the state does not move for a mistrial, "the involvement of the state is relevant in determining whether a second trial is barred." Watts 492 So.2d at 1284; Carter v. State, 402 So.2d 817, 821-22 (Miss. 1981). In this case, Mitchell moved for the mistrial and the record does not indicate that the state opposed the motion. In Carter, 402 So.2d at 821, this Court, citing Divans v. California, 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977), stated:
In order to elevate an order granting a mistrial in a criminal case at the request of the defendant to one which could form the basis of the claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for the mistrial.
A careful reading of the record shows that the mistrial was granted here because the state's witness continued to refer to incidents relating to Shannon's older sister and cousin. The district attorney and the court tried several times to direct Kathy's testimony toward the incident involving Shannon, and not to speak about "they" or "the kids." The district attorney at one point told the judge that Kathy was confused about what she could and could not testify about in this trial.
It was clearly improper for this witness to talk about other incidents involving this defendant and other children. However, the state certainly did not elicit such testimony, and tried several times to channel the witness's thinking toward Shannon only; however, the attempts failed, and the trial court did the only sensible thing under the circumstances by granting a mistrial. The error was not deliberate on the state's part, and the court did not grant the mistrial for an improper purpose. Therefore, this assignment is without merit.
The Court Erred by Allowing the State to Adduce Hearsay Evidence Over the Objection of the Defendant when Two Witnesses Testified to Out-of-Court Statements Purportedly Made by the Prosecutrix.
Mitchell argues two propositions under this assignment of error. First, he urges that the testimony of Kathy Rylant and Anita Bosarge concerning what Shannon said about the incident is inadmissible hearsay. The defendant made timely objection to these statements. The state contends that this Court has adopted the "tender years" exception to the rule against hearsay in Williams v. State, 427 So.2d 100, 103 (Miss. 1983), and therefore, the testimony of Kathy and Anita concerning Shannon's statements about the incident were admissible under this exception. However, the Mississippi Rules of Evidence, effective January 1, 1986, abrogated evidentiary rules set out in caselaw. See M.R.E. 1103. Since the case sub judice was tried after the effective date of the Mississippi Rules of Evidence, this issue must be decided under our Rules of Evidence.
There is no hearsay exception under M.R.E. 803 which specifically encompasses the tender years exception as set forth in Williams, and the trial court did not consider whether nor not the testimony fell within any other hearsay exceptions enumerated under M.R.E. 803, but relied solely on the tender years exception. Therefore, it is necessary that we reverse and remand this case to the trial court for consideration of this testimony under M.R.E. 803 exceptions. Having said that, we note that several of the 31 states which have adopted Rules of Evidence similar to ours, and similar to the Federal Rules of Evidence, have considered hearsay statements made by child victims of sexual abuse under the 803(2) exception, which reads:
A statement relating to a startling event or condition made while the declarant *1370 was under the stress of excitement caused by the event or condition.
See, e.g., People v. Foreman, 161 Mich. App. 14, 410 N.W.2d 289 (1987); State v. Brown, 341 N.W.2d 10 (Iowa 1983); State v. Padilla, 110 Wis.2d 414, 329 N.W.2d 263 (1982); People v. Kreiner, 415 Mich. 372, 329 N.W.2d 716 (1982); People in Interest of O.E.P., 654 P.2d 312 (Colo. 1982). The Federal courts, too, have considered out-of-court statements of child witnesses of sexual abuse under 803(2). See, e.g., Morgan v. Foretich, 846 F.2d 941 (4th Cir.1988); U.S. v. Dorian, 803 F.2d 1439 (8th Cir.1986); U.S. v. Iron Shell, 633 F.2d 77 (8th Cir.1980). We note, further, that many courts, State and Federal, with evidence rules similar to ours, admit statements by child sexual abuse victims to physicians and psychologists while being examined, diagnosed, and treated following an incident of sexual abuse under exceptions analogous to M.R.E. 803(4). However, for the most part, physicians and psychologists have been allowed to testify only about the incident, as related by the child, and not about the identity of the assailant, unless the identity of the assailant is reasonably pertinent to treatment, such as in cases where the child has been sexually assaulted by a member of the family. In such cases, the need to remove the child from the situation becomes a pertinent part of the treatment. See, e.g., Morgan v. Foretich, 846 F.2d 941 (4th Cir.1988); United States v. Renville, 779 F.2d 430 (8th Cir.1985); U.S. v. Iron Shell, 633 F.2d 77 (8th Cir.1980); U.S. v. Nick, 604 F.2d 1199 (9th Cir.1979); State v. Robinson, 153 Ariz. 191, 735 P.2d 801 (1987). See also Hall v. State, 539 So.2d 1338 (Miss. 1989).
State and Federal courts, operating under evidentiary rules similar to ours, have also approached out-of-court statements made by child victims of sexual abuse under the so-called "catchall" exception when the rules so provide. Mississippi has adopted such an evidence rule, M.R.E. 803(24), as well as 804(b)(5). Our "catch-all" exceptions, however, require that the statements offered not be specifically covered by any other hearsay exception, but that they have "equivalent guarantees of trustworthiness"; furthermore, the statement (1) must be offered as evidence of a material fact; (2) be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable effort; (3) and the general purposes of these rules in the interest of justice will best be served by admission of these statements into evidence. Our recent decision in Hall v. State, supra, considers the point, as well.
The comments to M.R.E. 803(24) indicate that use of the "catchall" should be carefully considered and applied rarely, so as not to devour the hearsay rule. We note that, as other courts have applied the "catchall" to a child's out-of-court statement about an incident of sexual abuse, they have found that the statements did not fit under the excited utterance exception or under the exception for seeking medical treatment. In determining the equivalent guarantees of trustworthiness, these courts have considered the age of the child, under the rationale that young children do not possess enough sexual knowledge to fabricate such incidents. These courts further look at the length of delay in reporting the incident and the surrounding reasons for the delay, such as fear, threats, and lack of opportunity to report. They also consider the persons to whom the incident was reported  family, social workers, law enforcement officers. See, e.g., U.S. v. Dorian, 803 F.2d 1439 (8th Cir.1986); U.S. v. Renville, 779 F.2d 430 (8th Cir.1985); State v. Robinson, 153 Ariz. 191, 735 P.2d 801 (1987); State v. Brown, 341 N.W.2d 10 (Iowa 1983). On remand, it will be necessary for the trial court to consider the testimony of Kathy and Anita concerning Shannon's statements in light of any applicable exceptions to the hearsay rule under M.R.E. 803. On the record before us now, it appears that the testimony does not meet the requirements of 803(2) since Shannon did not report the incident while still under the stress of the startling event. She did *1371 not report it the same day it happened, but may have waited two weeks, and then spoke up only when questioned by Kathy after Shannon's sister and cousin came back from the Mitchell's, claiming that Mitchell had "done something to them." Under this set of facts, it is evident that the event itself did not cause Shannon to make her statements, as required by M.R.E. 803(2).
Of course, since the hearsay statements were not related to a physician, no M.R.E. 803(4) considerations are available under which to consider the statements' admissibility. Hall v. State, supra.
Finally, the question remains as to whether the hearsay statements could have been admitted under M.R.E. 803(24). Since the trial court made none of the findings necessary for the statements' admission under 803(24), but, understandably, relied on our pre-Rules "tender years" exception (the Mississippi Rules of Evidence had only been in effect for some six months at the time of trial), it will be incumbent upon the trial judge from the court proceedings before him to first determine and find that the hearsay testimony is not otherwise admissible under M.R.E. 803, but could qualify under 803(24). See Hall v. State, supra; and Cummins v. State, 515 So.2d 869, 873 (Miss. 1987).
We note that at the trial below, Shannon testified and, therefore, we are not required here to engage in any Sixth Amendment analysis of the right of an accused to be confronted with the witnesses against him. However, a Confrontation Clause problem could arise if Shannon failed to testify on remand, for an accused's confrontation rights must be observed. See, e.g., Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).
We recognize the difficult task we assign to the trial court on remand. We reiterate what we recently stated in Hosford v. State, 525 So.2d 789, 790 (Miss. 1988):
We recognize that in cases of this nature, when the prosecuting witness is of tender years and must testify on the most intensely personal matter a child could be called upon to relate under circumstances that would be extremely difficult even for an adult, that the state is faced with what at times must appear an insuperable burden. [footnote omitted] Constitutional due process absolutely requires, however, that credible evidence subject to cross-examination be addressed before a court and jury before any accused can be convicted of a crime. Neither the state nor this court is at liberty to change this.
We must deal with one more matter. We realize that six months after the adoption of the M.R.E., the Legislature passed what is now Miss. Code Ann. §§ 13-1-401  415, outlining special evidentiary provisions for considering the admissibility of a child's out-of-court statements in situations such as the one under discussion here today. We have most recently discussed these statutes at great length in Hall v. State, we need not reiterate that entire discussion here. Suffice it to say that we appreciate the Legislature's attention to the special evidentiary problems surrounding child victims of sexual abuse, and applaud such spirit of cooperation between the Legislative and Judicial branches. However, by adopting the M.R.E., this Court defined what is reliable evidence and established judicial processes to test reliability. Such action is at the core of the judicial function, and as such is separate and different from the legislative function. Furthermore, our inherent rule-making authority to regulate practice and procedure within the Judicial Branch has long been recognized. Newell v. State, 308 So.2d 71, 76 (Miss. 1975). See also City of Mound Bayou v. Roy Collins Construction Co., 457 So.2d 337, 342 (Miss. 1984); Moran v. Necaise, 437 So.2d 1222, 1225 (Miss. 1983); Scott v. State, 310 So.2d 703, 705 (Miss. 1975); Brown v. City of Water Valley, 319 So.2d 649, 651 (Miss. 1975); Order Adopting Mississippi Rules of Civil Procedure, May 26, 1981; Order Adopting Mississippi Rules of Evidence, September 24, 1985. In short, upon remand *1372 the admissibility of these child hearsay statements should be determined under the Mississippi Rules of Evidence.
Also bearing upon our decision to reverse and remand is Mitchell's second contention under this assignment of error that hearsay evidence of other unrelated crimes was wrongfully admitted into evidence. In her testimony, Kathy Rylant stated that Shannon told her that on other occasions Mitchell had exposed himself to the children. Again, as our previous discussion points out, the hearsay aspect of this testimony does not fit exceptions to the hearsay rule, since there is no indication in the record that Shannon immediately and spontaneously reported these incidents of exhibitionism. Thus, the testimony should not have been admitted.
Furthermore, the testimony is evidence of other bad acts or wrongs, and is controlled by M.R.E. 404(b), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The state urges that this testimony was admissible to show the system of criminal action and lustful disposition of Mitchell toward children, citing Hicks v. State, 441 So.2d 1359 (Miss. 1983). Hicks synthesizes this Court's previous holdings in Otis v. State, 418 So.2d 65 (Miss. 1982), Speagle v. State, 390 So.2d 990 (Miss. 1980), Davis v. State, 367 So.2d 445 (Miss. 1979), and Brooks v. State, 242 So.2d 865 (Miss. 1971). These cases all held that evidence of other acts of sexual relations between the defendant and victim were admissible to show the lustful, lascivious disposition of the defendant toward that particular victim. See also Woodruff v. State, 518 So.2d 669 (Miss. 1988); White v. State, 520 So.2d 497 (Miss. 1988). It should be emphasized that these cases specifically limited evidence of other sexual relations to those between the defendant and the particular victim. In this case, evidence was admitted of Mitchell exposing himself to children other than Shannon. The state would have this Court expand the holding in these cases to include testimony that shows a defendant's character of lustful behavior toward children in general, not just toward Shannon. Such an expansion would not be consistent with the purposes of M.R.E. 404(b), nor consistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person.
Therefore, we reverse and remand on this aspect of Mitchell's assignment of error, as well.
Adding further to our decision to reverse and remand is Mitchell's third assignment of error:
The Court Erred When It Failed to Grant a Mistrial to Defendant When the State's Attorney Improperly Asked Questions Designed to Elicit Prejudicial Non-Probative and Inflammatory Testimony as to the Mental Health of the Defendant.
On cross-examination of Cindy Mitchell, a defense witness, the state asked her about a conversation she had with another neighbor where Cindy stated that if she could afford it, she would seek professional mental help for Steve. The defendant did not object to this line of questioning. On re-cross, defense counsel asked Cindy if she knew of any reason that Steve should seek professional help, to which she replied, "not at this time." At that point, the court excused the witness and recessed for lunch. When proceedings resumed, defense counsel moved for a mistrial on the grounds that this testimony was highly prejudicial and non-probative. The judge overruled the motion.
This Court has stated that failure to object to a question precludes objecting after the witness has answered unfavorably and then moving for a mistrial. Pennington *1373 v. State, 437 So.2d 37, 40 (Miss. 1983). In this case, the defendant even re-crossed the witness about the objectionable testimony and moved for a mistrial after the witness was excused. In Kelly v. State, 493 So.2d 356 (Miss. 1986), we set out the proper procedure for objecting to a line of questioning:
After the sustaining of an objection, if counsel is not satisfied or feels the admonition of the trial judge is ineffective, defense counsel should then move for a mistrial.
Id. at 360. See also Whitlock v. State, 419 So.2d 200, 202 (Miss. 1982). In other words, the trial judge must have an opportunity to consider and cure the objection before counsel can move for a mistrial. Therefore, Mitchell is procedurally barred from bringing this assignment of error. However, it occurs to this Court upon review of the entire trial record that this testimony compounded the errors of admitting the hearsay testimony and the testimony of other bad acts. As we pointed out in our recent Hosford opinion, supra, citing Brown v. State, 168 Tex.Cr.R. 67, 323 S.W.2d 954, 957 (1959):
In the language of a Kentucky court, "a litigant is entitled to at least one tolerably fair trial regardless of the nature of his offense, ... and to this end we have made our ruling." Shawhan v. Commonwealth, Ky., 318 S.W.2d 541, 544.
Taken all together, the hearsay testimony, the testimony of other bad acts, and this potentially prejudicial testimony as to Mitchell's mental health leads us to conclude that Mitchell has not received a "tolerably fair trial."
We address one final assignment of error:
The Court Erred by Failing to Require the State to Produce to the Defendant All Prior Out-of-Court Statements of the Prosecutrix, and Other Witnesses, Which Statements Either Were or Could Have Been Reduced to Writing.
In his discovery motion filed before the trial under the Uniform Criminal Rules of Circuit Court Practice 4.06, Mitchell specifically asked for any and all exculpatory material, with the further requirement that if the prosecution was in any doubt as to whether or not the material was exculpatory, such material should be submitted to the court for in camera inspection, pursuant to Rule 4.06(h), (i). The prosecution complied by supplying to the trial court statements given by Shannon and Candace Bosarge to Policewoman Jo Ann Byrd. After Shannon testified on direct and cross-examination, and after she had been excused as a witness, Mitchell asked the trial court to turn over the statements to defense counsel for review. The trial judge stated that he had reviewed the statements, found them to be brief and not significantly different from Shannon's testimony. The trial judge then denied the defendant an opportunity to review the statements and stated that he would seal the statements and make them a part of the record for this court to review. Mitchell claims it was reversible error for the court to deny him the opportunity to review the statements. He relies on Hentz v. State, 489 So.2d 1386 (Miss. 1986), as controlling.
In Hentz the state refused to turn over tapes to the defendant because, in its judgment, the tapes were not exculpatory. This Court stated:
An important question in discovery, such as involved here, is who is going to determine whether or not tapes or written instruments are exculpatory or important to the defense, if counsel is unable to see, hear, or know what is contained therein? Is the state attorney the only person who will make that determination? We think not. The Court now declares that as a matter of good practice and sound judgment in the trial of criminal cases, prosecuting attorneys should make available to attorneys for defendants all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case.
Id. at 1388. While Hentz is instructive as to this Court's attitude toward prosecutors *1374 who decide not to reveal statements, we are not faced with exactly this problem in this case. The state complied with the request for discovery by supplying the statements to the court. The judge complied with Rule 4.06(h) and reviewed the statements in camera and found them not to be materially inconsistent with Shannon's testimony. He then sealed the statements and made them part of the record for appeal. In this situation, the case of Barnes v. State, 460 So.2d 126 (Miss. 1984), appears to be more helpful. In that case, this Court, quoting Cassibry v. State, 404 So.2d 1360, 1371 (Miss. 1981), stated:
A very wide discretion must be afforded trial judges in deciding when to permit a defendant to examine the statement of a prosecution witness... . Two tests are important in determining whether the accused should have been given a copy of the statement: (1) did the statement contain information favorable to the accused not revealed in the trial? and (2) was the statement substantially the same as the testimony of the witness?
Barnes, 460 So.2d at 133. Barnes went on to say that if a statement contains exculpatory material, the judge has no discretion  he must produce the statements to the defendant. Id. Finally, in Barnes, the judge sealed the statements and filed them in the record for appeal purposes. This Court then reviewed them and determined that they should have been disclosed. Id. at 134. This procedure has been viewed with favor by this Court in subsequent cases. See, e.g., Tolbert v. State, 511 So.2d 1368, 1369 (Miss. 1987); Arteigapiloto v. State, 496 So.2d 681, 684 (Miss. 1986); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Barnes v. State, 471 So.2d 1218, 1221 (Miss. 1985).
While the trial court did not err in denying Mitchell an opportunity to view the statements by following the procedure outlined above, we think the better practice is to allow defense attorneys to determine whether or not such material is useful to the defense of the case, following our reasoning in Hentz.

CONCLUSION
For the reasons outlined above, we reverse and remand this case to the Circuit Court of Jackson County, Mississippi.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
In my dissent in Hall v. State, 539 So.2d 1338 (Miss. 1989), I paid my respects to the usurpation by this Court in telling the Legislature it has no authority to pass an evidentiary statute of the nature of Miss. Code Ann. § 13-1-401, et seq. I continue to dissent to the majority doing so in this case.
The majority, after telling the Legislature how "we appreciate" their attention to this "special evidentiary problem" and "applaud such spirit of cooperation between the Legislature and Judicial branches," proceeds to slap them in the face by telling this branch of our government that any statute or law it enacts dealing with evidence will have no force or validity whatever. Such hypocritical statements will surely be resented. I cannot accept what in my view is usurpation of authority by this Court.
Neither has the majority made an examination of cases nationwide as to whether or not in the prosecution of sex cases of this nature evidence of similar crimes committed upon others is admissible. That is also unfortunate. The overwhelming weight of authority is that in the unusual context of cases of this nature such evidence is admissible. The authorities are exhaustively annotated in 77 A.L.R.2d 841  908 (1958 and Supp. 1986); see, Lingerfelt v. State, 147 Ga. App. 371, 249 S.E.2d 100 (1978); Grey v. State, 273 Ind. 439, 404 N.E.2d 1348 (1980); *1375 McKinney v. State, 505 S.W.2d 536 (Tex. Crim. 1974); People v. Jackson, 110 Cal. App.3d 560, 167 Cal. Rptr. 915 (1st Dist. 1980); People v. Crespin, 631 P.2d 1144 (Colo. App. 1980); McGahee v. Massey, 667 F.2d 1357 (11th Cir.1982); People v. DiGiacomo 71 Ill. App.3d 56, 27 Ill.Dec. 232, 388 N.E.2d 1281 (1979); Austin v. State, 262 Ind. 529, 319 N.E.2d 130, cert. den. 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680, not following Meeks v. State, 249 Ind. 659, 234 N.E.2d 629 (1968); Porter v. State, 272 Ind. 267, 397 N.E.2d 269 (1979); People v. Clark, 62 Mich. App. 740, 233 N.W.2d 856 (1975); State v. Gatlin, 295 N.W.2d 538 (Minn. 1980); State v. Reinke, 343 N.W.2d 660 (Minn. 1984); Hough v. State, 70 Wis.2d 807, 235 N.W.2d 534 (1975); Howton v. State, 391 So.2d 147 (Ala.App. 1980); People v. Greene, 34 Cal. App.3d 622, 110 Cal. Rptr. 160 (1st Dist. 1973); State v. Evans, 212 Neb. 476, 323 N.W.2d 106 (1982); State v. Burchfield, 664 S.W.2d 284 (Tenn. 1984); People v. Hammer, 98 Mich. App. 471, 296 N.W.2d 283 (1980); State v. Sutton, 4 N.C. App. 664, 167 S.E.2d 499 (1969); Bissell v. State, 157 Ga. App. 711, 278 S.E.2d 415 (1981); Estes v. State, 244 Ind. 691, 195 N.E.2d 471 (1964); Kerlin v. State, 255 Ind. 420, 265 N.E.2d 22 (1970); Gilman v. State, 258 Ind. 556, 282 N.E.2d 816 (1972); Pieper v. State, 262 Ind. 580, 321 N.E.2d 196 (1975); Bowen v. State, 263 Ind. 558, 334 N.E.2d 691 (1975); State v. Carignan, 272 N.W.2d 748 (Minn. 1978); State v. Griffin, 497 S.W.2d 133 (Mo. 1973); State v. Young, 661 S.W.2d 637 (Mo. 1984) (citing annotation); Willett v. State, 94 Nev. 620, 584 P.2d 684 (1978); People v. Chandley, 89 App.Div.2d 740, 453 N.Y.S.2d 919 (1982); State v. Gardner, 59 Ohio St.2d 14, 13 Ohio Ops.3d 8, 391 N.E.2d 337 (1979); Commonwealth v. Booth, 291 Pa.Super. 278, 435 A.2d 1220 (1981); Johnston v. State, 418 S.W.2d 522 (Tex.Crim. 1967); O'Neal v. State, 421 S.W.2d 391 (Tex.Crim. 1967); McDonald v. State, 513 S.W.2d 44 (Tex.Crim. 1974); State v. Yates, 220 Kan. 635, 556 P.2d 176 (1976).