THOMAS, P.J.,
for the Court:
¶ 1. Ronald Turnage was convicted in the Forrest County Circuit Court of fondling a nine-year-old child. For his offense, Turnage was sentenced to nine years incarceration in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Turnage appeals to this Court on the following grounds:
I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO FIRST CROSS-EXAMINE TURNAGE AND THEN, FOLLOWING HIS EXCULPATORY STATEMENTS, PRESENT REBUTTAL TESTIMONY REGARDING HIS ALLEGEDLY IMPROPER ACTS WITH A SECOND CHILD.
II. THE JURY’S GUILTY VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.
FACTS
¶ 3. The present case originates from an innocuous childhood “sleep over” which occurred during early November 1994. Ten-year-old Alison initiated the activity by inviting, with her mother’s permission, her nine-year-old friend Jennifer [both are fictitious names] to spend the night at their home in Hattiesburg, Mississippi. During the early evening, Turnage, the mother’s employer and alleged paramour, stopped by the house while en route to drop off his brother at a local bingo hall. During his short visit, Turnage apparently offered to entertain the girls, suggesting that the group eat dinner at Shoney’s restaurant. After receiving an affirmative response from all and confirmation from Alison’s *1051 mother that she would meet them at the restaurant shortly, Turnage left, with the two girls in tow, to deliver his brother. But, according to both Alison and Jennifer, Turnage did not proceed directly from the bingo hall to Shoney’s as planned. Rather, he pulled into a dimly lit parking lot adjacent to the facility where he paused to fondle the girls, as they both independently described it, “under my shirt and pants.” Following this brief episode the trio eventually arrived at the restaurant for an apparently uneventful dinner with Alison’s mother. Thereafter, though, the trio drove to Turnage’s home where, again according to the girls, he led Jennifer into a bedroom and allegedly repeated the abuse until others, including Alison’s mother, arrived.
¶ 4. Several months later, after the girls purportedly found it increasingly difficult to handle the continuing emotional torment stemming from their experience, they recounted these events to their respective parents who, in turn, contacted law enforcement officials. Although § 99-7-2(1) would seemingly have allowed for a single multi-count indictment covering Turnage’s behavior toward both girls, the prosecution inexplicably chose not to pursue such. Rather, Turnage was indicted and tried separately for his independent acts of fondling, with the instant conviction being only for those involving Jennifer.
ANALYSIS
I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO FIRST CROSS-EXAMINE TUR-NAGE AND THEN, FOLLOWING HIS EXCULPATORY STATEMENTS, PRESENT REBUTTAL TESTIMONY REGARDING HIS ALLEGEDLY IMPROPER ACTS WITH A SECOND CHILD.
¶ 5. Turnage’s first assignment of error stems directly from the district attorney’s decision to seek and procure separate indictments. While no concrete confirmation may be found in the record, the trial transcript discloses the prosecution’s initial reluctance to introduce evidence of the second fondling not charged in the relevant indictment. For example, the State introduced its case-in-chief by eliciting testimony from Alison regarding her memory of that evening’s events. While her recollection revealed many of the details described above, she told jurors only of the abuse inflicted upon her friend, never revealing that she too had suffered the same. Having apparently been carefully instructed to speak only of her own experience, Jennifer was similarly selective when her turn to testify arrived in that she too neglected to mention Turnage’s behavior toward Alison. When Turnage himself subsequently took the stand to testify, he was, at the direction of his attorney, equally cautious in a clear attempt to avoid opening the door for the presentation of any such evidence during cross-examination. For instance, Turnage never attempted to present evidence of his good character. Moreover, as Turnage gave his version of that evening’s events in chronological fashion, defense counsel periodically interrupted to ask whether or not he had committed any improper act or act of molestation as to Jennifer. Each time, his attorney deliberately ended the question with the child’s name. Each time, Tur-nage answered with a brief, “I did not, sir.” Then, during Turnage’s cross-examination, the trial court permitted the State, over defense counsel’s strenuous objections, to delve into the alleged fondling of Alison. At this point Turnage finally issued the blanket denial which he had carefully avoided on direct. Thereafter, and again over continuing objections, the judge allowed the prosecution to recall Alison, albeit briefly, so that she might testify in rebuttal about the specifics of her own abuse.
¶ 6. Despite his subsequent opportunity to provide surrebuttal testimony, Turnage now argues that the admission of any evidence concerning the alleged fondling of Alison, a second victim not noted in the *1052 pertinent indictment, was unduly prejudicial and grounds for reversal under Mississippi case law. Relying heavily upon Nicholson v. State, 704 So.2d 81 (Miss.1997), Turnage urges that the introduction of evidence of an alleged bad act involving a second victim different from the victim in the instant case violates the Mississippi Rules of Evidence. Furthermore, he cites Hosford v. State, 525 So.2d 789 (Miss.1988), claiming that even were such evidence admissible, it should have been presented during the prosecution’s case-in-chief. In response, the State argues that the evidence was properly admitted pursuant to Baine v. State, 604 So.2d 258 (Miss.1992), because the incidents were essentially portions a single transaction. As for Turnage’s second assertion, the State directs our attention to the applicable standard of review, arguing that a trial court’s decision to allow rebuttal testimony over such contentions is discretionary. We agree with the State.
¶ 7. In Mitchell v. State, 539 So.2d 1366 (Miss.1989) the Mississippi Supreme Court rejected the argument that evidence of a defendant’s prior sexual misbehavior with other children is admissible during the State’s case-in-chief to show “the system of criminal action and lustful disposition of [the defendant] toward children.” Mitchell, 539 So.2d at 1372. The court held that to allow “testimony that shows a defendant’s character of lustful behavior toward children in general, not just [toward the victim at issue],” would “not be consistent with the purpose of M.R.E. 404(b).” Id. The court concluded that under Rule 404(b) “evidence of other sexual relations [should be limited] to those between the defendant and the particular victim [at issue].” Id. The court explained that to admit evidence of prior bad acts involving victims other than the one for whom the defendant was on trial would be “inconsistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person.” Id. Accordingly, it has long been our understanding that Mitchell requires an identity of victims in sexual abuse cases, i.e., the prior bad act sought to be admitted must have been committed upon the same victim that the defendant is currently on trial for having allegedly harmed. Consequently, if the evidence of prior bad acts concerns acts committed upon victims other than the one involved in the instant case, the prior bad acts evidence is inadmissible on direct under our rules of evidence. See Elmore v. State, 510 So.2d 127, 131 (Miss.1987) (holding that “the admission of evidence of remote instances of sexual misconduct with someone other than the pros-ecutrix was reversible error”).
¶ 8. The more recent Nicholson opinion cited by Turnage served to confirm this conclusion in the context of rebuttal testimony. Nicholson, 704 So.2d at (¶ 37). In Nicholson the defendant, another accused child molester, stated on direct that he “had never done anything like this to any child.” Id. at (¶ 11). Thereafter, much as is the case here, the State successfully argued that he had “opened the door” to the presentation of evidence regarding pri- or bad acts. Id. The trial court therefore allowed prosecutors to first cross-examine Nicholson and then present rebuttal testimony regarding an unrelated instance of alleged sexual abuse involving a second child. Id. at (¶ 13).
¶ 9. In reviewing this alleged challenge to Nicholson’s truthfulness, our supreme court began by dismissing Rule 609 as a basis for impeachment noting that Nicholson’s previous alleged actions were clearly distinguishable from the criminal convictions contemplated by the rule. Id. at (¶¶ 21, 23) (distinguishing Rowe v. State, 562 So.2d 121 (Miss.1990)). The justices also quickly noted that the rebuttal testimony fell under the authority of M.R.E. 608 as interpreted by Jackson v. State, 645 So.2d 921, 923-24 (Miss.1994), which disallows proof of specific instances of conduct by extrinsic evidence for impeachment purposes. Id. at (¶ 22). In that vein, the court determined that M.R.E. 404(b) pro *1053 vided the most appropriate analysis and so held, reasoning that the lack of either an admission or conviction could mislead jurors as to the prior acts relative importance to the issue actually being tried. Id. at ¶ 36; M.R.E. 403. And, as the court noted, “this is especially so where the so-called ‘character evidence’ that is being rebutted is only a general denial that the accused harms children.” Id. at ¶ 37 (setting aside suggestion in Stewart v. State, 596 So.2d 851 (Miss.1992), that door to cross-examination may be opened by defendant’s exculpatory statement, while writing that such “is a far cry from allowing a third person to testify on rebuttal as to specific acts”).
¶ 10. With this in mind, we can safely say that had the evidence presented in the case sub judice concerned remote activity with Alison, the Nicholson opinion would almost certainly dictate that we side with Turnage. However, these incidents occurred almost simultaneously, thereby constituting what may only be viewed as a single transaction. This brings the instant set of facts within the ambit of a distinct line of cases, the most pertinent of which is Baine v. State, 604 So.2d 258 (Miss.1992). Baine was indicted under § 97-5-23 for sexually molesting three children who attended his wife’s day care center. Baine, 604 So.2d at 259. The charges were severed, and he was convicted in separate trials of touching two of the victims for lustful purposes. Id. During one of these trials, his victim, despite being instructed not to, made several references to what Baine had done to “us,” apparently referencing the abuse suffered by other attendees of the center. Id. at 261. The defense repeatedly approached the bench to move for mistrial based upon the child’s use of plural pronouns. Id. However, the trial court denied the motions and refused to admonish the jury on grounds that an admonition would simply call the jury’s attention to the matter. Id. In affirming this action, our supreme court held the general rule excluding evidence of other crimes to be wholly inapplicable since Baine’s actions toward these other children were “integrally related in time, place, and fact to the molestation of [the instant victim].” Id. at 262.
¶ 11. Certainly, “[t]he general rule in Mississippi is that in criminal trials, with certain exceptions, proof of other criminal conduct by the accused is inadmissible.” Id. (quoting Darby v. State, 538 So.2d 1168, 1173 (Miss.1989)). However, as the Baine court noted, “[p]roof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction.” Id. The State, after all, has a legitimate interest in telling a rational and coherent story of what happened to the victim. Id. (citing McFee v. State, 511 So.2d 130, 136 (Miss.1987)). See also Neal v. State, 451 So.2d 743, 759 (Miss.1984) (upholding murder conviction despite trial testimony which revealed that defendant had contemporaneously killed or raped three other victims). Because Turnage’s acts, having been committed almost simultaneously, were intertwined to an even greater degree than those at issue in either the Baine opinion or the authorities cited therein, we hold that this reasoning applies with equal force in the case sub judice. The State was entitled, under these particular circumstances, to inform jurors of the abuse Alison suffered at the hands of Turnage. The real problem in this case lies in the manner in which this evidence was presented.
¶ 12. Because Turnage repeatedly brought the matter before the trial court and again argues so on appeal, we feel it necessary to confirm that Nicholson as cited above and the case sub judice differ in one important and immediately apparent aspect—Turnage’s direct examination simply did not “open the door” to the presentation of evidence regarding prior bad acts. Rather, it was the prosecution that first broached the subject of Alison’s molestation during cross-examination, thereby purposefully eliciting Tur- *1054 nage’s sweeping exculpation. This having been said, consistency with the “single transaction/coherent story” rationale just employed requires that we examine further the State’s decision to withhold this part of its case-in-chief. See Hosford, 525 So.2d at 791 (citing People v. Crump, 5 Ill.2d 251, 125 N.E.2d 615, 623 (1955)). As the Hosford case cited by Turnage indicates, the party who has the burden of proof must generally introduce all substantive evidence in his case-in-chief rather than holding it for use in rebuttal. Id. Should there be any doubt as to whether evidence is properly case-in-chief or rebuttal evidence, then the evidence may be properly employed in rebuttal if:
(1) its reception will not consume so much additional time as to give undue weight or impractical probative force to the evidence so received in rebuttal, and
(2) the opposite party would be substantially well prepared to meet it by surre-buttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
(quoting Roney v. State, 167 Miss. 827, 827, 150 So. 774, 775 (1933)). As with any determination of admissibility, the decision ultimately lies within the trial court’s discretion. Wakefield v. Puckett, 584 So.2d 1266, 1268 (Miss.1991).
¶ 13. At first glance, Hosford appears factually similar because the district attorney therein waited until the testimony of an accused child molester was presented to mention unrelated complaints about the defendant’s mistreatment of his own stepchildren and wife. Hosford, 525 So.2d at 790. Upon the defendant’s denials, the State produced a county welfare investigator who confirmed reports of violence in the household. Id. But in reversing, the supreme court chastised the prosecution for failing to make any proffer before the trial judge by which the admissibility of the evidence might have been discussed prior to its mention before jurors. Id. at 792. And, more central to the outcome of the case, the justices condemned the evidence as “manifestly incompetent at any stage of the trial proceedings” because it concerned remote, yet “extremely prejudicial” acts having no probative value on the issue before the jury. Id. at 791-2. Furthermore, the opinion recognized that the prosecutor had no evidentiary basis to ask the condemned questions and compounded the error by continuing to do so even after defense counsel’s objection had been sustained. Id.
¶ 14. We cannot classify these girls’ experiences as multiple portions of a whole while in the same breath claiming doubt as to their proper position within the State’s case. This evidence should have been presented long before Turnage’s cross-examination. However, we nevertheless feel that the error is forgivable under these circumstances. As we have said, Alison’s account of her own abuse was competent evidence of Turnage’s guilt. But, more importantly, the prosecutor’s uncertainty on this point and resulting initial hesitancy are understandable considering the current state of the law and therefore fall far short of the “very poor,” “deliberate” trial tactics designed to “ambush” Hosford. Id. at 791-2, 794 n. 3. Consequently, we hold this assignment of error to be without merit.
II. THE JURY’S GUILTY VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 15. Turnage also contends that he should have been granted a new trial based upon various weaknesses in the prosecution’s case against him, claiming that the evidence overwhelmingly.pointed toward his innocence. To this end, he brings to our attention certain minor inconsistencies in Alison and Jennifer’s testimony as well as their delay in reporting the incident. Moreover, he suggests possible motives for their allegedly untruthful accusations by focusing alternately on previous discussions regarding restitution and alleged resentment on the part of Alison’s *1055 mother following the demise of her unsubstantiated romantic relationship with him. However, as the State responds, the proper audience for this argument was the jury, not this appellate Court. Since all of these details were presented in graphic detail below, we find no basis for re-evaluating the resulting verdict.
¶ 16. Motions for new trial challenge the weight of the evidence and “implicate the trial court’s sound discretion.” McClain v. State, 625 So.2d 774, 781 (Miss.1993). A new trial motion should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. McClain, 625 So.2d at 781. Consequently, on appeal this Court will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable to the State. Id.
¶ 17. In this instance, the testimony offered by the two girls was perhaps not as exacting as the prosecutor would have wished. The sheer lapse of time had caused their memories to fade with regard to certain incidental details such as the precise date. Moreover, their intellectual immaturity was only exacerbated by the continuing emotional anguish from which they both clearly suffered. As a result, their descriptions of Turnage’s behavior, which the district attorney gently and painstakingly extracted, were both brief and somewhat indefinite in that only childlike terminology was employed. But Alison and Jennifer nevertheless testified as clearly and unequivocally as could reasonably be expected of two pre-teen girls under the circumstances. Not only were their accounts consistent with one another as to most pertinent facts, with the exception of the two momentary episodes of fondling, they were consistent with Tur-nage’s recollection as well. With this in mind, we are confident in the jury’s evaluation of their credibility and leave the resulting guilty verdict undisturbed. This assignment of error is also without merit.
¶ 18. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF FONDLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL APPEAL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., DIAZ, AND PAYNE, JJ., CONCUR.
KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND COLEMAN, JJ.
COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND BRIDGES, J.
IRVING AND LEE, JJ., NOT PARTICIPATING.