This is an appeal from a conviction of the crime of rape in the Circuit Court of the First Judicial District of Hinds County, Mississippi. From a sentence of fifty years in the penitentiary, Killingsworth appeals.
The state's case against Killingsworth was based on the uncorroborated testimony of the thirty-year-old prosecutrix. We would point out at the outset that her account of the incident is somewhat suspect and extremely weak.
Appellant and the prosecutrix became acquainted through the prosecutrix's next-door neighbor. According to the prosecutrix, their acquaintance had been casual until the day of the alleged rape. She testified that on March 11, 1978, she was on her front porch talking with a neighbor when the defendant and a companion drove up and asked her whether she had seen Robert, the next-door neighbor. After she replied, "No," he asked if he could use her bathroom, which she permitted. As she entered the house, defendant was returning from the bathroom, whereupon he asked, "If she had anything to drink." She replied that there was some "booze" in the kitchen and she brought him some vodka and orange juice from the kitchen. The prosecutrix then testified that as she and the defendant were sitting in the living room talking, she got up to straighten the television and when she turned around, the defendant hit her and told her to get on the bed, that he was going to have sex with her. She further testified that she scuffled with the defendant and was able to break loose from his grasp, whereupon she ran into the kitchen and seized two knives. When he pursued her to the kitchen, she took one of the long skinny knives and stabbed the defendant. Her testimony was that the knife went into his left side approximately eight inches. She said that after she stabbed him, he raped her and that she submitted out of fear. It was also her testimony that on the day of the alleged rape, she had on a long, cotton halter dress and did not have on any underwear.
Killingsworth took the stand in his own defense and testified as follows: He and his friend, Robert, the prosecutrix's next-door neighbor, would go over to the prosecutrix's house regularly to play cards and watch television. The prosecutrix would often sit in Robert's lap flirting with him. Killingsworth testified that he did not want to get involved with the prosecutrix because of his friendship with Robert. On the morning of the incident, the defendant testified that the prosecutrix was standing on her front porch and asked if he wanted to come over and wait until Robert returned home. He testified that after they went inside, she offered him a marijuana cigarette, which he declined, but said that he would take a drink. After she brought him some vodka, she asked him to dance with her. He testified that while they were dancing, she asked if he noticed that she was not wearing any panties or bra; she then went into the bedroom, called him, and asked if he wanted to pull his shoes off. As he was undressing, she told him not to take all his clothes off as her son would soon be back. After he got in bed, and as he was getting *Page 223 
on top of her, she pushed him off and said: "You are going to give me $15.00 aren't you? I need some groceries." Killingsworth said he told her he would take her to the grocery store. They proceeded to have sex and after they finished, she asked for the money and he told her he did not have but $2.00. He then testified that she got up, went into the kitchen, came back with two knives and as he was leaning over putting on his boots, she stabbed him in the side with one of the knives. After she stabbed him, he grabbed her wrist, slapped her and tussled with her to take the knife away.
While it is true that a conviction for rape may rest on the uncorroborated testimony of the person raped, that testimony should always be scrutinized with caution. Richardson v. State,196 Miss. 560, 17 So.2d 799 (1944). Moreover, in such cases, when wholly inadmissible, inflammatory evidence is injected into the trial by the prosecuting attorney over objection of defendant and after the court has sustained an objection to such evidence, and where the version of the occurrence by the defendant is just as plausible or more plausible than that of the person raped, a new trial should be ordered unless it can be said with confidence that the inadmissible, inflammatory material had no harmful effect on the jury.
During cross-examination of the defendant, the district attorney produced a jacket which the defendant identified as being his. In full view of the jury, the district attorney then ran his thumb through the pocket of the jacket and removed some green leafy material. The district attorney proceeded to question the defendant:
 MR. PETERS: You just saw me run my thumb in your pocket. Do you know what that green material is — looks like green plant-like material?
 MR. KILLINGSWORTH: No.
 MR. PETERS: You deny that you've ever had marijuana in that jacket?
At this point the attorney for defendant objected to the questions and moved for a mistrial. The court overruled the motion for mistrial but sustained the objection. The district attorney proceeded:
 MR. PETERS: Is this your jacket?
 MR. KILLINGSWORTH: Yes, sir.
 MR. PETERS: Do you know what that material is on my thumb that came out of your coat pocket?
 MR. KILLINGSWORTH: You say do I know what it is?
 MR. PETERS: Yes.
 MR. KILLINGSWORTH: I can't tell. My brother had that on.
Again, defense counsel objected and moved for a mistrial. The court sustained the objection but overruled the motion for mistrial. The district attorney pressed on:
 MR. PETERS: You say your brother wears the jacket?
 MR. KILLINGSWORTH: He has worn it, so we both wear it.
At the insistence of the defendant's attorney, the court instructed the jury that they were to disregard any reference made to the green substance or to the coat itself.
It is the contention of the appellant that the presentation of the jacket and the aforementioned questioning of the defendant was an effort on the part of the prosecution to show defendant's involvement in another crime, i.e., possession of marijuana, unrelated to the charge for which the defendant was standing trial, and such was so highly prejudicial that the defendant did not get a fair and impartial trial.
The court has on numerous occasions held that in a prosecution for a particular offense, evidence tending to show that defendant may be guilty of another offense, unrelated to the charge at issue, is inadmissible. Sumrall v. State, 272 So.2d 917 (Miss. 1973).
The case of Sumrall v. State has appeared twice before this Court. In the first decision of Sumrall v. State,257 So.2d 853, 854 (Miss. 1972), the Court stated the general rule as follows:
 It is a well-settled general rule that the issue on a criminal trial should be single and that the testimony should be confined *Page 224 
to that issue and on the trial for one offense the prosecution should not be allowed to aid the proof against the defendant by showing he committed other offenses, even though of a like nature. Cummings v. State, 219 So.2d 673 (Miss. 1969); Ladnier v. State, 254 Miss. 469, 182 So.2d 389 (1966); Brown v. State, 224 Miss. 498, 80 So.2d 761 (1955); Pegram v. State, 223 Miss. 294, 78 So.2d 153
(1955); Floyd v. State, 166 Miss. 15, 148 So. 226
(1933).
In that case, the Court reversed and remanded the same back to the circuit court for another trial. At the second trial, the district attorney repeatedly asked a witness questions regarding prior unrelated criminal activity of the defendant, that being the smoking of marijuana. The questions were immediately objected to and the court admonished the jury to disregard the same. A motion for mistrial at that time was also denied. In reversing defendant's conviction at the second trial, this Court said:
 Careful consideration has forced us to conclude, on the basis of the entire record, that the repeated interjection of prejudicial matter, tending to show Sumrall guilty of other crimes and immorality, destroyed the possibility of a fair trial upon the charge in the indictment, and that this is true notwithstanding the Court's admonitions.
 (Sumrall v. State, 272 So.2d at 919 (Miss. 1973)).
It also may be noted in this case that the jacket and green leafy material in question were never offered into evidence. The complaining witness herself testified in response to questions by the district attorney that the defendant was not wearing a jacket on the day of the alleged incident. The complaining witnesses' testimony occurred before the testimony of the defendant, thus the district attorney knew that the jacket had no connection with the crime as charged, and the exhibition of it and the green leafy material was highly improper and prejudicial.
There are certain well-recognized exceptions to the general rule stated in Sumrall, supra, a summary of which is found inFloyd v. State, 166 Miss. 15, 148 So. 226 (1933), wherein the Court stated:
 There are exceptions to the rule which has been stated, such as where the offense charged and that offered to be proved are so connected as to constitute but one transaction, or where it is necessary to identify the offender, or where it is material to prove motive, and there is apparent relationship or connection between the act proposed to be proved and that charged, or where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge and the like . . .
The exhibition of the jacket and green leafy material by the district attorney and related questions in the presence of the jury did not come within any of the announced exceptions.
The complaining witness herself denied any knowledge of the jacket. No where during the testimony of this case was the jacket ever shown to have any connection with the charge for which the defendant was being prosecuted, and the only reasonable inference to be drawn by the jury was that the green leafy material was marijuana and that Killingsworth was in possession of it, a crime for which he was not being tried.
This Court has held "incompetent evidence, inflammatory in character, when presented to a jury carries with it a presumption that it was harmful." McDonald v. State, 285 So.2d 177 (Miss. 1973).
In McDonald, the Court noted that in an earlier decision,Coleman v. State, 198 Miss. 519, 23 So.2d 404 (1945), it held that it would reverse a conviction "unless it can be said with confidence that the inflammatory material had no harmful effect upon the jury." In view of society's understandable and well-founded attitude toward drug-related offenses, we are of the opinion that the presentation of the jacket and the green leafy material before the jury was highly prejudicial and we are unable to say with *Page 225 
confidence that it was not harmful to the defendant and that it had no effect on the jury's deliberations and verdict.
In a case such as is presently before the Court involving a close question of fact concerning appellant's guilt, the exhibition of the jacket and green leafy material was so prejudicial that it prevented the appellant from receiving a fair trial.
In Sumrall, supra, the Court ended its consideration of the prejudicial effect of unrelated and irrelevant matters by stating:
 Vigorous prosecution does not require, and fairness does not permit, that one charged with an offense in this area shall be loaded with prejudicial irrelevances. The commendable zeal of the District Attorney to convict those he believes guilty must never be allowed to blind either him or the courts to the necessity of affording to every man a fair trial.
 (272 So.2d at 919).
As stated earlier, the prosecutrix's testimony was extremely weak, suspect and uncorroborated. She testified that Killingsworth raped her after she stabbed him with a knife — such determination on his part seems to us somewhat improbable. Moreover, no blood from this wound was found on the prosecutrix's clothing or bed linens, which is also unusual.
Even though the court admonished the jury to disregard the evidence with respect to the jacket and green leafy material, we cannot say with confidence that it had no effect on the jury's verdict. See Sumrall, supra. Therefore, the conviction and sentence must be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.