# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00357-SCT

*SAMUEL PARRAMORE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2006 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JUSTIN TAYLOR COOK |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/26/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Samuel Parramore was convicted in the Circuit Court of Harrison County, Mississippi, on counts of statutory rape and unlawful touching of a child for lustful purposes. He was sentenced to forty years for the statutory-rape conviction and to ten years for the unlawful-touching conviction, to run consecutively, for a total of fifty years in the custody of the Mississippi Department of Corrections ("MDOC"). Following the denial of his "Motion for Judgment *Non Obstante Verdicto* or for New Trial in the Alternative," Parramore filed notice of appeal.

## FACTS AND PROCEEDINGS AT TRIAL

¶2.    From February until September 2001, seven-year-old K.A.M. was left in the care of her mother's live-in boyfriend, Parramore, while her mother was on U.S. Navy deployment to Guam. At trial, K.A.M., then age twelve, testified that during that period Parramore "raped"[1] her. K.A.M. could not recall the number of times, but stated that it occurred "more than once," and provided the jury with descriptive accounts.

¶3.    K.A.M. recalled that each incident occurred in the evening, when she was lying in bed. On one occasion, she testified that Parramore entered her bedroom, got into bed with her, and began touching her buttocks. She stated that Parramore then rolled her over onto her back, removed her underwear, and felt around her "private part." K.A.M. testified that Parramore then "put his private part into [her] private part."[2] While K.A.M. never actually saw Parramore's "private part," she was able to discern as much because she could distinguish between his hand and his "private part." According to K.A.M., she then began "scratching, kicking, and screaming" in an effort to get Parramore away from her. In response, K.A.M. stated that Parramore "would put duct tape over her mouth or put a pillow over [her] head." According to K.A.M., Parramore placed the tape "all around [her] head," taped her wrists behind her back, and again placed his "private part" inside hers. K.A.M. testified that when it was over, Parramore would remove the tape and leave the room. On one occasion, K.A.M. stated that Parramore apologized, explaining that his parents had done

---

[1]K.A.M. stated that she learned the word "raped" from "several TV shows and [her] mom."

[2]K.A.M. stated that by "private parts," she meant Parramore's "penis" and her "vagina."

the same thing to him. She then added, "but he would keep doing it." K.A.M. further testified that she did not immediately inform her mother of these incidents for fear of how she would react and what Parramore would do to both of them in response.

¶4.     K.A.M. did not inform anyone of the incidents until approximately two years later, when living with her mother in Jacksonville, Florida. By this time, Parramore was no longer living with them. K.A.M. testified that her mother told her that, "[she] could tell her anything and to trust her." After hearing this, K.A.M. informed her mother that Parramore had "raped" her. This disclosure was corroborated by K.A.M.'s mother.

¶5.     The mother then called the Jacksonville Police Department, and a police detective spoke with K.A.M. The mother then took K.A.M. to the Children's Crisis Center in Jacksonville where they met with forensic interviewer Stephanie Cox, who later testified as an expert witness for the State. The mother testified that K.A.M. also received counseling for approximately two years through the Family Service Center, a program provided by the Navy.

¶6.     Cox conducted two interview sessions with K.A.M., both of which were videotaped and played before the jury. Regarding K.A.M.'s failure to report these incidents for almost two years, Cox testified that "children act different ways," and that such a delay in reporting is not uncommon. As to K.A.M.'s behavior during the interviews, Cox testified that K.A.M. answered questions uniformly throughout and that her behavior and demeanor were consistent with that of other sexually abused children whom Cox had interviewed. Based on the consistency of her answers, Cox opined that K.A.M. had been neither influenced nor coached. On cross-examination, Cox testified that K.A.M. had differentiated between telling

3

the truth and telling a lie, therefore, she believed K.A.M. was telling the truth. However, Cox admitted that if a child were merely telling her things that the child believed to be true, she likely would not be able to tell the difference.

¶7. Parramore was the sole witness for the defense. He testified that, other than a few instances when he had to discipline K.A.M., he never laid an untoward hand on her. He stated that he loved K.A.M. and took care of her as he would his own child. According to Parramore, he and the child's mother met in 1999 on the Seabee base in Gulfport. They became romantically involved several months later, and began living together in late 2000. Parramore testified that there were two six-month periods when the mother was on deployment and K.A.M. was left in his care. These were, specifically, from February until September 2001, when K.A.M.'s mother was deployed to Guam, and in 2002, when she was deployed to Japan. Parramore stated that during both periods, he took care of K.A.M. by feeding her, washing and ironing her clothes, and disciplining her when necessary. According to Parramore, K.A.M.'s mother ended their relationship after returning from Japan. Nonetheless, Parramore further testified that the mother suggested that he move to Jacksonville with them to help take care of K.A.M. In December 2002, Parramore moved into an apartment in Jacksonville. K.A.M. and her mother arrived the following month. Parramore testified that he saw K.A.M. and her mother almost daily, while helping the mother to fix up her house and babysitting K.A.M.

¶8. In March 2003, Parramore became involved with a new girlfriend, who soon became his fiancée.[3] On August 1, 2003, Parramore testified that he called K.A.M.'s mother after

---

[3]According to Parramore, K.A.M.'s mother learned of this relationship in March 2003.

she called his fiancée and made accusations against him. According to Parramore, he inquired why she was doing this and her only response was that the police were looking for him.

¶9. Parramore further testified that on August 24, 2003, he was at a club with a friend when K.A.M.'s mother arrived. According to Parramore, she signaled him to call her. Later that evening, Parramore stated that K.A.M.'s mother called him and suggested that they meet to talk. According to Parramore, they subsequently met in the local Krystal's parking lot. Parramore testified that K.A.M.'s mother got into his vehicle and began apologizing, informing him that she wanted to marry him and have his children. According to Parramore, they then began "messing around," eventually returning to his residence and engaging in "sexual contact." Thereafter, Parramore testified that he returned her to her vehicle in the Krystal's parking lot. When K.A.M.'s mother saw a photograph of Parramore and his fiancée on his dashboard, Parramore stated that she first asked him if that was the woman he was going to leave her for, and then told him that he was going to pay for this. At the close of Parramore's case-in-chief, the State called K.A.M.'s mother, who denied seeing Parramore at the club or meeting him in the Krystal's parking lot.

¶10. Parramore was indicted for statutory rape, pursuant to Mississippi Code Annotated Section 97-3-65(1)(b), and for the touching of a child for lustful purposes, pursuant to Mississippi Code Annotated Section 97-5-23(1). At trial, the jury found Parramore guilty of statutory rape and the unlawful touching of a child for lustful purposes. He was sentenced to forty years for the statutory-rape conviction and to ten years for the unlawful-touching conviction, to run consecutively, for a total of fifty years in the custody of the MDOC.

Parramore subsequently filed a "Motion for Judgment *Non Obstante Verdicto* or for New Trial in the Alternative," which was denied by the circuit court. From this ruling, Parramore now appeals.

## ISSUE

¶11. This Court will consider:

> Whether the circuit court abused its discretion in failing to grant Parramore's motion for a new trial on the grounds that the verdict was against the overwhelming weight of the evidence.

## ANALYSIS

¶12. An individual may be found guilty of rape on the uncorroborated testimony of the prosecuting witness, where the testimony is not discredited or contradicted by other credible evidence. *See Withers v. State*, 907 So. 2d 342, 353 (Miss. 2005) (persons accused of statutory rape "may be found guilty on the uncorroborated testimony of a single witness.") (citation omitted); *Killingsworth v. State*, 374 So. 2d 221, 223 (Miss. 1979) ("[w]hile it is true that a conviction for rape may rest on the uncorroborated testimony of the person raped, that testimony should always be scrutinized with caution."); *Dubose v. State*, 320 So. 2d 773, 774 (Miss. 1975) ("the testimony of the victim of a rape may be sufficient to support a guilty verdict where the victim's testimony is neither contradicted nor discredited by other evidence or by surrounding circumstances."); *Blade v. State*, 240 Miss. 183, 188, 126 So. 2d 278, 280 (1961) (the testimony of the prosecutrix in a rape case "does not need corroboration . . . ."). Thus, Parramore does not attempt to contest the legal sufficiency of his conviction on appeal. Rather, he avers that the jury verdict was contrary to the overwhelming weight of evidence.

6

¶13.    According to this Court:

"[a] motion for new trial challenges the weight of the evidence. ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999).  A reversal is warranted only if the trial court *abused its discretion* in denying a motion for new trial." [***Ivy v. State***, 949 So. 2d 748, 753 (Miss. 2007)] (emphasis added).  In ***Bush*** [***v. State***, 895 So. 2d 836 (Miss. 2005)], this Court set out the standard of review for weight of the evidence, stating:

> [w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997).  We have stated that on a motion for new trial:
>
> > the court sits as a thirteenth juror.  The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000) . . . . [T]he evidence should be weighed in the light most favorable to the verdict.  ***Herring***, 691 So. 2d at 957.

***Bush***, 895 So. 2d at 844.

***Wilkins v. State***, 2008 Miss. LEXIS 588 at *11-12 (Dec. 4, 2008).

¶14.    Parramore's argument on appeal simply raises the same points of contention that were part of his trial defense.  These include challenges regarding: the accuracy and veracity of K.A.M.'s testimony, the credibility of K.A.M.'s mother's testimony, the two-year delay before K.A.M. reported the incidents, the fact that no one from the surrounding apartments ever responded to K.A.M.'s alleged screaming, and the absence of any physical evidence

7

connecting him to the crime.[4] However, Parramore fails to point to anything in the record negating the evidence presented by the State. K.A.M. provided testimony at trial, and the two videotaped sessions with Cox were consistent with her testimony. *See **Withers***, 907 So. 2d at 353 (persons accused of statutory rape "may be found guilty on the uncorroborated testimony of a single witness.") (citation omitted). Parramore's assertions were matters of fact for the jury to resolve. *See **Collier v. State***, 711 So. 2d 458, 462 (Miss. 1998) ("[o]ur case law is axiomatic on the proposition that the jury is arbiter of the credibility of testimony."). Unquestionably, this type of case "should always be scrutinized with caution." ***Killingsworth***, 374 So. 2d at 223. However, while "the prosecutrix' testimony should be scrutinized with judgment and care, 'no [un]reasonable suspicion should be indulged against the complaining witness.'" ***Smith v. State,*** 394 So. 2d 882, 884 (Miss. 1981) (quoting ***Hogan v. State***, 46 Miss. 274, 279 (1872)). Viewing the evidence presented "in the light most favorable to the verdict," this Court cannot conclude that the circuit court erred in affirming the jury's verdict, thus "sanction[ing] an unconscionable injustice." ***Bush***, 895 So. 2d at 844. In short, the evidence does not "preponderat[e] heavily against the verdict." ***Id***. (quoting ***Amiker***, 796 So. 2d at 947). Accordingly, this Court finds that the circuit court did not abuse its discretion in denying Parramore's motion for new trial.

---

[4]This Court notes that Parramore concedes that physical evidence is not required to support a conviction either for statutory rape or the unlawful touching of a child for lustful purposes. *See **Walker v. State***, 878 So. 2d 913, 916 (Miss. 2004) (citing ***Winston v. State***, 754 So. 2d 1154, 1156 (Miss. 2000)) (physical evidence is not needed "to uphold a conviction of capital rape."). Nonetheless, he asserts that the absence thereof "is further indication of the lack of credible evidence linking [him] to the crime for which he is convicted."

**CONCLUSION**

¶15. We affirm the order of the Circuit Court of Harrison County denying Parramore's "Motion for Judgment *Non Obstante Verdicto* or for New Trial in the Alternative."

¶16. **COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF UNLAWFUL TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES TO RUN CONSECUTIVELY FOR A TOTAL OF FIFTY (50) YEARS TO SERVE DAY FOR DAY.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**